TOWN OF READING v. TOWN OF LUDLOW.

*Pauper.  Settlement.  Marriage.  Decree of Nullity.  Lunacy.*

The marriage of a man to a woman who was before and at the time of the marriage ceremony a lunatic incapable of entering into a valid marriage contract, does not confer the settlement of the husband on the wife where the marriage has been decreed to be a nullity on the ground of such lunacy.

The decree of nullity cannot be attacked in a proceeding for a removal of the woman as a pauper, although on the facts agreed upon in the case no decree would have been granted.

REMOVAL OF PAUPER, tried upon a case stated as follows:

It is agreed by and between the towns above named, to try the case between them as above named, which is a question concerning the legal settlement of one Lydia Catherine Buck, a pauper now supported by said town of Reading at the Insane Asylum at Brattleboro, Vt., in all its stages to final judgment thereon, upon the following statement of facts, to wit:

The said Lydia is the legitimate daughter of one Richard Warren, who was born in said Ludlow, February 3, 1797, and had a legal settlement there, and he lived there until November 9, 1835, when he removed to Jaffrey, N. H., where he has ever since resided with his family.  The said Lydia was born at said Ludlow November 9, 1827, and generally lived in her father's family and made her home there until her marriage to George H. Buck, as hereinafter mentioned.  She worked in factories to considerable extent, and went to school at Townshend Female Seminary a few terms.  From the time the said Lydia was about seventeen years old she had occasional fits of lunacy, and about 1852, while in one of those fits, she was sent by her friends to the Insane Asylum at Concord, N. H., for her recovery, where she remained a few months and was discharged as recovered.  September 10, 1855,

she had another attack of the same malady, and was sent by her friends to the Insane Asylum at Brattleboro, Vt., for her recovery, and January 25, 1856, she was discharged therefrom as recovered. In the summer and fall of 1861 she taught a district school in West Windsor, Vt., and January 22, 1862, she went to live with the said George H. Buck, in said Reading, as a hired girl and nurse for his wife, who was then sick, and on the death of said first wife she had another like fit, from which she recovered in a few days, and then took the charge of his domestic affairs as house-keeper about fifteen months, and until about September 14, 1863, when she was married to said George, at Woodstock, Vt., as appears by the record thereof, which is referred to. The said George then lived in said Reading, was born there, has always lived there from his birth, and all that time has had a legal settlement in said Reading, and both before and at the time of said marriage had a full knowledge of the said Lydia's situation, lunacy, and confinement in said Insane Asylum on account of such lunacy. The said Lydia lived with said George as his wife from said marriage until the decree of nullity was made as hereinafter specified, except such time as she was confined at Brattleboro in the Insane Asylum, as hereinafter set forth. April 14, 1865, the said George carried her to Brattleboro to said asylum on account of her lunacy, where she stayed until discharged on July 14, 1865, as improved. February 28, 1867, for the same reason she was again carried to the same asylum by the said George, where she was confined until June 20, 1867, when she was discharged as recovered. August 3, 1867, the said George again carried her to said Insane Asylum for the same cause, where she still remains, at the expense of said Reading since February 3d, 1869. Said George preferred his petition to the supreme court in Windsor county, Vt., at their February term, 1868, to annul and vacate said marriage, and at their February term, 1869, said court did vacate the same, as appears by the files and records of said court, which are referred to. A guardian ad litem of the said Lydia was appointed by said court on the hearing of said petition, who accepted said trust and was present at said hearing, but made no defense thereto.

It is further agreed that if any parts of the foregoing statement of facts are not legitimate evidence in the case, such portion thereof as is not such evidence shall be rejected by the court trying the same, and the cause decided as if such portion of this agreement had not been made.

In this case, upon the written statement of facts, the court, at the December term, 1870, BARRETT, J., presiding, rendered judg-

ment that the pauper was unduly removed, and that the decree of nullity therein referred to was void, to which said town of Reading excepted.

*Charles P. Marsh*, for the plaintiff.

*Sewall Fullam*, for the defendant.

The opinion of the court was delivered by

Ross, J.   It is conceded that the pauper, Lydia C. Warren, has her legal settlement, derived from the settlement of her father, in the town of Ludlow, unless she has acquired one since January 22d, 1862, in the town of Reading, either in her own right or through her marriage with George H. Buck.   Deducting the time, since then, which she has been confined in the Asylum for the Insane at Brattleboro, as a lunatic, in accordance with section 40 of chapter 20 of the General Statutes, her residence in Reading prior to the order of removal was less than seven years.   She has failed, therefore, to acquire a settlement in her own right by her residence in that town.   The marriage ceremony was performed between her and George H. Buck, September 14, 1863. His legal settlement is in the town of Reading.   At the February term of this court, 1869, that marriage ceremony was decreed to have been a nullity, on the ground that the pauper was before, and at the time, the ceremony was performed, a lunatic, incapable of consenting to or entering into any valid contract of marriage, and that that disability had continued up to the time the decree was granted.   The court granting the decree of nullity had full jurisdiction over the parties and the cause ; yet it is claimed that decree is itself a nullity, for the reason that the facts agreed upon in this case are such that, if they had been made known to the court, no decree of nullity would have been granted.   It is claimed that the facts agreed upon in this case show that George H. Buck knew at the time of the marriage that she had been a lunatic, and that at the time the marriage ceremony was performed she had recovered, and was of sound mind, and continued of sound mind for a year and a half thereafter.   If these are the

facts, and they were made to appear before the court granting the decree, it is perfectly apparent the court would never have declared the marriage a nullity. We are forced, therefore, to the conclusion that the facts found by the agreed case are not as claimed by the defendant, or they differ much from those which appeared before the court granting the decree. We think the facts agreed upon do not necessarily conflict with the finding of the court granting the decree. It is stated she had one attack of lunacy while at George H. Buck's as a servant, at the time of the death of his first wife, but it is not stated that he was aware of or had any knowledge of it. We should naturally expect that he, under the existing circumstances, would not very closely observe her mental condition. He did not send her to the asylum for a year and a half after the performance of the marriage ceremony. This may be true and the pauper have been a lunatic all the while. There are many lunatics outside of any asylum for the insane. There are many lunatics whose condition is not apparent to common observers. Persons of ordinary intelligence and observation live sometimes for years with those who are in fact lunatics, and observe, occasionally and repeatedly, indications of lunacy, and yet have no conception or belief that the persons are lunatics till the disease assumes a more decided and aggravated form. Then they call to mind the formerly observed indications of lunacy, and are fully satisfied the disease has existed and preyed upon the mind of its victim for years. To draw the true line of demarkation, in certain cases, between a person of sound mind and a lunatic,—between a person whose mind is in health, and guided by an intelligent, self-controlled will, and one whose mind is preyed upon by disease, and guided by a will controlled by some fancy or hallucination, or to determine when the mind of an individual passes from the former to the latter state,—is no easy task, and requires more skill than falls to the lot of ordinary individuals. But if the facts agreed upon by the parties are irreconcilable with the findings of the court granting the decree, we feel bound quite as much by the results arrived at by the court from the testimony of witnesses given with the obligations of an oath resting upon them, as by the statements of the parties, agreed

upon for the purposes of the trial, gathered from statements made by persons when not under oath. It does not follow that the county court could disregard the decree of nullity, when called in question collaterally in this proceeding, although it was satisfied the decree was procured by the production of false testimony, and would be set aside if the proceedings were directly upon the decree, between the parties thereto. It is a well settled general principle that the judgment of a court having jurisdiction of the parties and cause, cannot be attacked in any collateral proceeding. But we are not left to rely upon this general principle. The legislature has expressly provided that " a sentence of nullity of marriage, if pronounced during the life-time of the parties, shall be conclusive evidence of the invalidity of the marriage in all courts and proceedings." Gen. Sts., ch. 70, § 16. This language is too clear and explicit to be disregarded. The decree must be conclusive of the nullity of the marriage. It is claimed by the defendant, that if the decree of nullity is conclusive evidence of the invalidity of the marriage, yet there was a marriage in fact, and that alone entitles the pauper to take the settlement of her husband. The ceremonies necessary to evidence a valid marriage were all performed ; so that, if the lunatic had, at any time during the coverture, recovered, and the parties thereto had continued to cohabit as husband and wife, her consent would have been presumed, and the marriage ceremony would have been ratified, and the marriage have become valid from its inception. But the decree of nullity proceeds upon the ground that the lunatic had never enjoyed any lucid interval during the cohabitation, so there could never have been any consent on her part. It is the *consent* of the parties, given in legal form, not their cohabitation, which makes the marriage. The decree of nullity conclusively establishes that this consent never existed ; and the parties, after the decree, stand related to each other, as to all rights except those especially saved by the statute, as though the marriage ceremony had never been performed. In this respect a decree of nullity differs from a divorce. A divorce is the vacation of the marriage contract for a sufficient cause, and is conclusive evidence that the marital rights have once existed. A decree of nullity

simply discloses that a valid marriage contract never existed.   We think the statute conferring the settlement of the husband upon the wife has reference only to valid marriages.   It was provided by statute that the wife should take the settlement of the husband, because, in the language of the law, the husband and wife are one, and the husband that one, and it would contravene the policy of the law to separate them by an order of removal.   This principle attaches only to legal marriages.

Judgment of the county court is reversed, and judgment that the pauper was duly removed.