JOHN T. FOX v. HENRY G. HICKS.[1]

August 16, 1900.

Nos. 12,077—(216).

**Domicile—Minor Child of Divorced Parents.**

When a divorce has been granted to the wife, and unrestricted custody of the minor child of the marriage given her in the decree, her domicile establishes that of the child.

**Same—Heirs of Child.**

Upon the law of the domicile of such minor child at the time of its death depend the inheritance rights of its heirs.

**Vested Legacy.**

Where a specific legacy is set apart from an estate for a minor legatee, to be given at a time in the future, as under the terms of the will in this case, such legacy is vested; and the fund designated therein should be segregated from the estate, and, upon the death of the legatee before its receipt, descends to her heirs.

John T. Fox, as administrator of the estate of Ethel Vanderwarker, deceased, petitioned the probate court for Hennepin county for an order requiring Henry G. Hicks, as executor of the will of John Vanderwarker, deceased, to pay to him a legacy bequeathed in the will to the petitioner's intestate. From an order granting the petition, the executor appealed to the district court for that county. In the district court the case was tried before Harrison, J., who made findings of fact, and as conclusion of law found that the petition should be dismissed. From an order denying a motion for a new trial, the petitioner appealed to the supreme court. Reversed.

*Geo. D. Emery,* for appellant.

The decree of divorce expressly gave the mother custody and

[1] Reported in 83 N. W. 538.

control of Ethel and in effect constituted her the guardian of the child. Deering, Civ. Code (Cal.) §§ 197, 198, dispose of any rights which the father might otherwise claim. Having the control and custody, the right to fix the domicile of the child must be necessarily hers. The divorce transferred all the father's parental rights to the mother. Wilkinson v. Deming, 80 Ill. 342. To effect a change of domicile there must be both an actual residence and intent to remain there. Magowan v. Magowan, 57 N. J. Eq. 322. The party entitled to the custody of the child has the right to determine and change its domicile. Deering, Civ. Code (Cal.) § 213; Brightly, Purdon's Dig. (Pa.) 1154; Townsend v. Kendall, 4 Minn. 315 (412), 322; Burritt v. Burritt, 29 Barb. 124. The mother's domicile was its domicile in absence of evidence of contrary intent. People v. Dewey, 23 Misc. (N. Y.) 267. A parent entitled to custody of a child has a right to change his residence, subject to the power of the court to restrain a removal which would prejudice the child. Deering, Civ. Code (Cal.) § 213. This is declaratory of the law. Brightly, Purdon's Dig. (Pa.) 1154; Townsend v. Kendall, supra; Burritt v. Burritt, supra. The subsequent marriage of the mother in no way affected her powers or duties as guardian or the status of the child. G. S. 1894, § 4542; Deering, Civ. Code (Cal.) § 255. The rights of the parties in divorce proceedings as to custody, support, services, and duty of maintenance of minor children should be determined therein. Burritt v. Burritt, supra; Husband v. Husband, 67 Ind. 583; G. S. 1894, § 4802.

The guardian has a right to change the domicile of the child, even to another state, the interest of the child being the sole object to which the court will look. Pedan v. Robb, 8 Ohio, 227; Wood v. Wood, 5 Paige, Ch. 596; Story, Conf. Laws, § 506; 2 Kent, Com. 227, note b; Corrie v. Corrie, 42 Mich. 509. The decree ipso facto takes away all control of the father. Wilkinson v. Deming, supra; People v. Dewey, supra; Marvin v. Foster, 61 Minn. 154. The decree of a court of a foreign state fixing the status of the parties and minor children is binding in this state. People v. Allen, 40 Hun, 611; Wakefield v. Ives, 35 Iowa, 238; Townsend v. Kendall, supra. A judicial award of children to the mother should be presumed to carry with it a transfer of parental duties as well as parental

rights. Brow v. Brightman, 136 Mass. 187; Stanton v. Willson, 3 Day, 37. The rulings of some of the courts of England and even of this country, upon the effect of marriage of the mother during her guardianship and as to the rights of the father, have been the result of peculiar statutory provisions or else of the common-law view of the status of the wife, and are becoming obsolete. There was ample evidence of the change of domicile and of its being fixed in Pennsylvania at the time of the child's death.

The court erred in finding that it was the intention of testator that Ethel should take only a contingent legacy, and the legacy never became vested in her. The estate vested and passed immediately on the death of testator, its enjoyment only being postponed, and at her death it vested in her heirs. The intention of testator as gathered from the entire will is what the court will seek to ascertain, and the law is strongly in favor of the immediate vesting of estates. An estate created by will vests immediately on the death of testator, unless intention to make it contingent only unequivocally appears. Scofield v. Olcott, 120 Ill. 362, 371; 2 Redfield, Wills, *157, *218, *220, *260; Bayard v. Atkins, 10 Pa. St. 15, 17; Doe v. Considine, 6 Wall. 458, 475; Collins v. Metcalfe, 1 Vern. 461; Saunders v. Vautier, Cr. & Ph. 240, 247; 2 Redfield, Wills, *221, *234, *236, *251; McCartney v. Osburn, 118 Ill. 403; Bredell v. Collier, 40 Mo. 287; Huber v. Donoghue, 49 N. J. Eq. 125; Littles Appeal, 81 Pa. St. 190; Clarkson v. Pell, 17 R. I. 646; Robinsons Estate, 149 Pa. St. 418; Sellers v. Reed, 88 Va. 377; Ingraham v. Ingraham, 169 Ill. 432; McArthur v. Scott, 113 U. S. 340, 375; Hawkins, Wills, 225, 226; Phipps v. Ackers, 9 Cl. & F. 583; Furness v. Fox, 1 Cush. 134; Eldridge v. Eldridge, 9 Cush. 516; Guyther v. Taylor, 3 Ired. Eq. 323, 327; Duffield v. Duffield, 1 Dow & Cl. 268, 311; Howe v. Hodge, 152 Ill. 252; Healy v. Eastlake, 152 Ill. 424; Weatherhead v. Stoddard, 58 Vt. 623; Zartman v. Ditmars, 37 App. Div. (N. Y.) 173.

The intention of testator to give a vested estate is apparent from many incidents: (a) from the use of the words "I give, devise and bequeath;" (b) from the fact that no bequest over is made in case of Ethel's death before reaching twenty-one; (c) from the language of the residuary clause which conveys the residue to trustees for

the use of Henry, "after paying the  *  *  *  foregoing bequests;" (d) from the fact that the legacy is made payable to her absolutely when she arrives at thirty; (e) from the direction to pay the interest when she reaches twenty-one and annually thereafter; (f) from the language of the will in requiring the principal, after payment of accumulations at twenty-one, to "remain invested for her benefit"; (g) by the direction to sever the fund from the estate and set it apart in a particular class of securities "for her benefit," to be paid over to her absolutely at a given time; (h) from the comparison with the provisions made for the care and disposition of the "residue" and its payment over to Henry when he shall reach forty, if in the opinion of the executors he shall have become a man of proper habits, etc.; (i) it was so declared to, and understood by, the father. Wardwell v. Hale, 161 Mass. 396; Sawyer v. Cubby, 146 N. Y. 192; Manice v. Manice, 43 N. Y. 303, 369; Smith v. Edwards, 88 N. Y. 92, 106; Murtha v. Wilcox, 47 App. Div. (N. Y.) 526; Warner v. Durant, 76 N. Y. 133; Patterson v. Ellis, 11 Wend. 260, 269; Fonnereau v. Fonnereau, 1 Ves. Sr. 118; Cave v. Cave, 2 Vern. 508; 2 Redfield, Wills, *251, and note 123; Hone v. Van Schaick, 20 Wend. 564; Van Wyck v. Bloodgood, 1 Brad. Sur. 154; Beach, Wills, § 177; Mumford v. Rochester, 4 Red. Sur. 451; Hanson v. Graham, 6 Ves. Jr. 239; Toner v. Collins, 67 Iowa, 369, 374; Duffield v. Duffield, supra; Linton v. Laycock, 33 Oh. St. 128, 134; In re Estate of Rogers, 94 Cal. 526, 529; Greet v. Greet, 5 Beav. 123, 128; Lister v. Bradley, 1 Hare, 10; In matter of Rouses Estate, 9 Hare, 649; Saunders v. Vautier, supra; Furness v. Fox, supra; 1 Jarman, Wills (5th Ed.) *837.

Where a legacy is given absolutely, but the time of payment is deferred, the legacy vests on the death of testator, even though the legatee may die before the time of payment; for in such cases the time of payment is not regarded as of the substance of the gift. Zartman v. Ditmars, supra; Patterson v. Ellis, supra; Loder v. Hatfield, 71 N. Y. 92; Nelson v. Russell, 135 N. Y. 137; Fuller v. Winthrop, 3 Allen, 51; Eldridge v. Eldridge, supra; Smith v. Edwards, supra; Traver v. Schell, 20 N. Y. 89; Everitt v. Everitt, 29 N. Y. 39; Warner v. Durant, supra; Gott v. Cook, 7 Paige, Ch. 521, 534; Frost v. McCaulley, 7 Del. Ch. 162.

The legacy, being personal property, had its situs at the domicile of Ethel at the time of her death, and descends according to the law of her then domicile. Jacobs, Dom. § 42. On her death the legacy became at once payable to her representatives. Toner v. Collins, supra; Millards Appeal, 87 Pa. St. 457; Furness v. Fox, supra; Eldridge v. Eldridge, supra; Farnam v. Farnam, 53 Conn. 261; Borastons Case, 3 Coke, 16; Hanson v. Graham, supra.

*Wilbur F. Booth,* for respondent.

The descent and distribution of personal property depends on the domicile of the intestate. The domicile of a child is the domicile of the father, so long as he is living. The separation of man and wife, where the care and custody of the child is with the wife, nevertheless does not change the domicile of the child. 5 Am. & Eng. Enc. 861–875; Jacobs, Dom. §§ 235–237; Von Hoffman v. Ward, 4 Red. Sur. 244; Cannons Estate, 15 Pa. Co., 312; Blumenthal v. Tannenholz, 31 N. J. Eq. 194; Guier v. O'Daniel, 1 Binn. 349; Town v. Town, 19 Conn. 229. While for the purpose of divorce a married woman may acquire a domicile apart from her husband, this is limited to that purpose. Until the decree of divorce was granted in California, the domicile of Ethel was in Minnesota. It is doubtful whether the mother acquired any independent domicile, except for the limited purpose of divorce, outside Minnesota. The moment she married a second time, she had no further authority, if she had it before, to change the domicile of herself or child. After the death of her husband, she removed back to Minnesota. Bearing in mind the rule that the domicile of origin clings closely and reverts easily, the domicile of both mother and child was at this time in Minnesota. It does not appear that any settlement was made in Pennsylvania, and the only testimony on the part of the mother is her statement that she intended to make Pennsylvania her permanent home and the home of her child. Such statements are of little or no value. Wright v. City, 126 Mass. 161; Weld v. City, 126 Mass. 166; Griffin v. Wall, 32 Ala. 149; 5 Am. & Eng. Enc. 873.

Whatever the intention of the mother may have been, she had no authority to change the domicile of the child, which at all times

was that of the father. A decree granting the custody of the child to the wife does not change the legal relation of the father to the child, nor emancipate it, nor does the child's settlement cease to follow that of the father. 2 Bishop, Mar. & Div. § 556. The settlement of a wife follows that of the husband, and the settlement of the child follows that of the father. 18 Am. & Eng. Enc. 778–787. The settlement of a widow acquired after the death of her husband is communicated to her infant children. In nearly all respects the principles of settlement are very closely analogous to those of domicile. Town v. Town, 2 Conn. 20; Buckminster v. Buckminster, 38 Vt. 248; 2 Bishop, Mar. & Div. § 1221. A decree giving custody of the child is merely a temporary order, and may be changed at any time. State v. Flint, 63 Minn. 187. Where defendant is not present in court and is served only by publication, courts are careful in granting decrees of divorce to do nothing except in reference to the status of the husband and wife. The care and custody of the children may be provided for, but only incidentally. De La Montanya v. De La Montanya, 112 Cal. 101; Gibson v. Gibson, 18 Wash. 489. A guardian as such has no authority to change the domicile of a ward. School v. James, 2 Watts & S. 568. There is a well-recognized distinction between residence and legal domicile. Keller v. Carr, 40 Minn. 428; Lawson v. Adlard, 46 Minn. 243. Nor does the provision quoted above from the California code giving the person having the care and custody of the child the right to change its residence affect the question. Jacobs, Dom. §§ 260–262; Lamar v. Micou, 112 U. S. 452; Daniel v. Hill, 52 Ala. 430; Wynn v. Bryce, 59 Ga. 529; Mears v. Sinclair, 1 W. Va. 185; Succession of Vennard, 44 La. An. 1076.

The cardinal rule in construction of wills is that the intention expressed in the instrument shall prevail, provided it be consistent with the rules of law. In re Swensons Estate, 55 Minn. 300, 308; Richey v. Johnson, 30 Oh. St. 288. Where there is no gift except in the direction of payment, the legacy does not vest until the time of payment arrives. Batsford v. Kebbell, 3 Ves. Jr. 262; Mackell v. Winter, 3 Ves. Jr. 236; 2 Williams, Exrs. 883; Sansbury v. Read, 12 Ves. Jr. 75; Knight v. Cameron, 14 Ves. Jr. 388; Butcher v. Leach, 5 Beav. 392; Walker v. Mower, 16 Beav. 365; Chance v. Chance, 16

Beav. 572; Gardiner v. Slater, 25 Beav. 509; Leake v. Robinson, 2 Mer. 363; Lloyd v. Lloyd, 3 Kay & Johns. 20; Davenhill v. Davenhill, 5 Weekly Rep. 18; Knight v. Knight, 2 Simons & S. 490; In re Grimshaws Trusts, L. R. 11 Ch. Div. 406; Spencer v. Wilson, L. R. 16 Eq. Cas. 501; Locke v. Lamb, L. R. 4 Eq. Cas. 372; Hunter v. Judd, 4 Sim. 455; Murray v. Tancred, 10 Sim. 465; Dewar v. Brooke, L. R. 14 Ch. Div. 529; Mair v. Quilter, 2 Y. & C. (Ch.) 465; Clayton v. Somers, 27 N. J. Eq. 230; Leeds v. Wakefield, 10 Gray, 514; Snow v. Snow, 49 Me. 159; Colt v. Hubbard, 33 Conn. 281; Moore v. Smith, 9 Watts, 403; In matter of Baer, 147 N. Y. 348; Hale v. Hobson, 167 Mass. 397; Colton v. Fox, 67 N. Y. 348; Clark v. Cammann, 14 App. Div. (N. Y.) 127; Delafield v. Shipman, 103 N. Y. 463; McClain v. Capper, 98 Iowa, 145; Seiberts Appeal, 13 Pa. St. 501; Goldtree v. Thompson, 79 Cal. 613; Smith v. Edwards, 23 Hun, 223; Scofield v. Olcott, 120 Ill. 362; Richey v. Johnson, supra; Hamilton v. Rogers, 38 Oh. St. 242; Judd v. Judd, 3 Sim. 525; Peck v. Carlton, 154 Mass. 231; Eager v. Whitney, 163 Mass. 463; Travis v. Morrison, 28 Ala. 494; Collier v. Slaughter, 20 Ala. 263; Allen v. Whitaker, 34 Ga. 6; Gilliland v. Bredin, 63 Pa. St. 393; 2 Woerner, Am. Law Adm. § 436; 1 Jarman, Wills (5th Ed.) *840; 29 Am. & Eng. Enc. 457. The fact that the fund was to be vested for the benefit of the legatee does not affect the rule. Walker v. Mower, supra; Gardiner v. Slater, supra; Leake v. Robinson, supra; Lloyd v. Lloyd, supra; Knight v. Knight, supra; In re. Grimshaws Trusts, supra; Spencer v. Wilson, supra; Colton v. Fox, supra; Delafield v. Shipman, supra. That interest on the fund was to be accumulated for benefit of the legatee does not affect it. Gardiner v. Slater, supra; Leake v. Robinson, supra; Lloyd v. Lloyd, supra; Knight v. Knight, supra; In re Grimshaws Trusts, supra; Locke v. Lamb, supra; Hale v. Hobson, supra; Colton v. Fox, supra; Delafield v. Shipman, supra. That the legacy was to be severed from the rest of the estate does not affect it. Clayton v. Somers, supra; Colt v. Hubbard, supra; Smith v. Edwards, supra. That there was a provision in the will for the sale of real estate to provide funds does not affect it. Clayton v. Somers, supra. That there was no specific bequest over in case the legacy should fail does not affect it. Chance v. Chance, supra;

Spencer v. Wilson, supra; Clayton v. Somers, supra; Snow v. Snow, supra.

The legacy lapsed and has gone into the residuary estate. 13 Am. & Eng. Enc. 28, 29, 39, 45; 2 Redfield, Wills, *157; 2 Williams, Exrs. (6th Am. Ed.) 1300; Appeal of Fairfax, 103 Pa. St. 166; Ballard v. Ballard, 18 Pick. 41; Dildine v. Dildine, 32 N. J. Eq. 78.

This was a legacy of money, but there was no fund left out of which it could be paid. It was, however, provided by the will that the executors should sell real estate. The legacy therefore became a charge on the realty. Where land is charged with a sum of money on a contingency and the contingency fails, the charge sinks for benefit of the devisee. 13 Am. & Eng. Enc. 42; 29 Am. & Eng. Enc. 463; 1 Jarman, Wills (5th Am. Ed.) *346; Croft v. Slee, 4 Ves. Jr. 60; In re Coopers Trusts, 23 L. J. Ch. 25, 4 D. M. & G. 757; Eddy v. Kelly, 72 Minn. 32. It is immaterial whether the bequest is expressly contingent or merely payable in the future on the legatee attaining a particular age, as in either case it sinks for benefit of the devisee if he dies under the age specified. 13 Am. & Eng. Enc. 43; Poulet v. Poulet, 1 Vern, 204; 1 Williams, Exrs. (7th Eng. Ed.) 1252–1255; 1 Swift, Dig. 454; Cruse v. Barley, 3 P. Wms. 20.

LOVELY, J.

Appellant Fox is the administrator of the estate of Ethel Vanderwarker, deceased, appointed by the proper court in Pennsylvania. He applied to the probate court of Hennepin county for an order requiring payment of a legacy bequeathed to Ethel Vanderwarker in the will of John Vanderwarker, deceased, of which respondent is executor, which was granted, and respondent appealed. Upon hearing in the district court, findings were filed, and an order reversing the judgment of the probate court rendered. A motion for a new trial was denied, from which order the entire record is brought here for review.

The facts requisite to an understanding of the questions involved may be summarized as follows: John Vanderwarker, a resident of Minneapolis, died January 21, 1887, after executing a will bearing date the same day, which was thereafter duly admitted to probate. This will contains the following provisions:

"I give, devise, and bequeath unto my executors the sum of five thousand dollars, to be held in trust for my beloved granddaughter, Ethel Vanderwarker, to be paid to my said granddaughter, Ethel, in the manner, at the times, and upon the conditions hereinafter stated, and not otherwise. Said sum of five thousand dollars shall be by my executors invested, by loaning the same, and taking as security for such loans first mortgages upon unincumbered real estate, the land of which shall be double the value of the loan made thereon. The interest on said loan to be added to the principal until my said granddaughter, Ethel, shall have arrived at the age of twenty-one years, at which time I direct my executors to pay to my said granddaughter, Ethel, all of the interest which shall have accrued to that time, leaving the said sum of five thousand dollars invested as aforesaid for her benefit. And I direct my said executors to pay to my said granddaughter, Ethel, the interest on said sum of five thousand dollars annually thereafter, until she arrives at the age of thirty years, when I direct my said executors to pay to my said granddaughter, Ethel, the said sum of five thousand dollars ($5,000), and any interest thereon which may have accrued and not have been paid to her."

Ethel Vanderwarker was the daughter of Henry H. Vanderwarker, son of testator, by his first wife. He was married to the mother of Ethel, February, 1879, at St. Paul. The child, Ethel, was born in April, 1880. In August, 1883, her parents separated. In December, 1884, the wife brought an action in Ramsey county to procure a divorce. The action was tried, and the divorce denied, but by order duly made in the action the custody of Ethel was given to the mother, who supported and cared for her until her death, some ten years later. In April, 1885, the mother left Minnesota, taking Ethel with her, and went to California. There has never been a final entry of judgment in the divorce proceedings in Ramsey county. By proceedings duly had, the mother of Ethel sought a divorce in the courts of California, and in February, 1886, obtained a decree granting the same, and giving her the absolute custody of the child. No appearance was made in this action by the husband, but judgment was properly secured and entered in behalf of the mother by default. The mother afterwards married a Mr. Rogers, and in 1891 returned to the state of Minnesota, and lived there from April of that year until September, 1892, when she left Minnesota, and, taking Ethel with her, went to Pennsylvania,

where the child was placed at school by the mother, and remained there until she died of diphtheria on January 31, 1893, at the age of thirteen years. Henry Vanderwarker in 1895 married again and has resided with his wife in this state since the death of Ethel.

At the time of the execution of the will, testator knew of the separation of his son from his wife, also of the divorce proceedings in Ramsey county and in California, and his legacy in favor of Ethel was probably made in the conviction on his part of the inability of his son and of the mother of Ethel to live together. From the time of the separation of Henry Vanderwarker and his wife, with the exception of the gift of a few presents of little value, the father did nothing for the support of Ethel; but that obligation, which was assumed by the mother, appears to have been most judiciously and effectively performed by the latter. The daughter was kindly nurtured during childhood and placed at excellent schools by her mother, who earned her living as a stenographer, while the father was provided for by an ample income derived from John Vanderwarker's estate. At the time of the removal of Mrs. Rogers and Ethel to Pennsylvania, the mother fixed her domicile at Downington, in that state, where it has continued ever since. Under the laws of California, as well as of Pennsylvania, the property of a deceased minor, unmarried and intestate, descends in equal shares to the father and mother, if living, or the survivor, subject to the payment of debts, while under our statute the father would take the entire property of such minor. G. S. 1894, §§ 4471, subd. 3, 4477, subd. 6.

Upon the facts above stated, which were substantially established at the trial, the court below held: First, that the domicile of Ethel at the time of her death was in Minnesota; that she took the domicile of her father from birth, which she, by legal intendment, had never lost; also, that it was the intent of the testator, John Vanderwarker, by the legacy above referred to, that Ethel should take at first only a contingent interest in such legacy, and that the same should not vest until she had reached the age of twenty-one years,—which are the subjects of contention on this appeal.

The most difficult question arises from the determination of the

domicile of Ethel at the time of her death, and this perplexity is occasioned by the artificial rules which have long been recognized concerning the subject in analogous cases.

It is contended by counsel for respondent that the domicile of a child is that of its father, that notwithstanding the legal separation of father and mother, or the guardianship imposed by the courts upon the mother, the domicile of the father is imputed, as a matter of law, to the child, which domicile affects inheritance rights, draws to it the law of such domicile, and controls the disposition of the estate of the child in case of death. It may be conceded that this contention finds support from cases in England and in this country, but none that directly decide upon the relations arising from the separation of the husband and wife by an absolute decree, when the decree gives the custody of the minor child to the wife.

The theory that the domicile of the father continues until the majority of the child, without reference to the residence of the child in the meantime and the real custody and control by the mother, is one of our inheritances from the common law, which merged the legal entity of the wife in that of her paramount lord, and recognized no separate right of property in her, free from the control of her husband. And until the recent enabling statutes, recognizing her independent right to control and manage her property, had swept away this unjust relic of antiquity, it followed as a logical necessity that the residence of the wife and mother, even in cases of separation by divorce, did not control and fix the domicile of the marriage offspring. There could not, from the nature of the case, be two places of domicile; and the courts, without right or authority to recognize a separate legal existence in the wife, were compelled to attach the domicile of the child, for legal purposes, to the father. Perhaps under the old restrictions in a majority of cases such a rule was the best that could be adopted, and was fraught with the least injury; but in a majority of instances also, marriage and parentage, from the natural affection and humanity of the father, were sufficient to insure the best interests of the children.

Exceptional cases of marital infelicity, producing separations and

involving judicial interposition to secure the best interests of the children, might well justify the earnest solicitude of the courts in dealing with the relations of husband and wife; and we cannot see why the humane and beneficial progress of the law, which has endowed married women with the right to hold property and the means for its protection, with all that such rights imply in behalf of her interest in her children should require an adherence to artificial rules, when the reason for the same has ceased, or compel us blindly to follow precedents, when the reason for their existence has ended. It has been held that the legal guardian of the child may fix its domicile, and that the domicile of such guardian draws to it that of the child. This is obviously the necessary rule, and in such cases secures the best interests of the child. Story, Confl. Laws, § 506; Pedan v. Administrator, 8 Ohio, 227; Wood v. Wood, 5 Paige, 596; Townsend v. Kendall, 4 Minn. 315 (412). It has also been held that there is a modification of the rule that arbitrarily attaches the domicile of the father to the child, and gives it to the mother, when the father has abandoned it. Corrie v. Corrie, 42 Mich. 509, 4 N. W. 213.

It would seem to follow that if the interest of the child is to be considered in cases of legal separation, when hostility between the father and mother exists, where the latter is endowed with the legal custody of the child, there is no wisdom or justice to support the rule that the legal residence of the mother and child does not establish the domicile of the latter. The question is new and of first impression in this state, and we should adopt a rule consonant with justice, humanity, and the progressive spirit of the law, which recognizes the separate legal rights of the wife, and will also secure the best interests of the person most concerned; and, upon the grounds stated, which seem to us to be convincing, we hold that at the time of the death of Ethel Vanderwarker the domicile of the mother established the domicile of her daughter Ethel. This view finds support upon principle as well as in the following recent decisions: Wilkinson v. Deming, 80 Ill. 342; Burritt v. Burritt, 29 Barb. 124; People v. Dewey, 23 Misc. (N. Y.) 267, 50 N. Y. Supp. 1013.

The remaining question involved in this appeal requires a con-

struction of the fourth paragraph of the will of John Vanderwarker above referred to, which turns upon the question whether the legacy provided for therein was vested and took effect upon the death of the testator, in which case the fund provided for should have been set apart, and upon the death of Ethel its avails necessarily distributed to her heirs according to the law of her domicile.

The provisions of the will do not seem to contemplate that the legacy shall remain in the estate, but shall be invested, the interest added to the principal, and both principal and interest are to accumulate; and, if the legacy is to be returned in any event to the estate, no provision therefor has been made in any other terms of the testament, and it does not seem probable that it was the intent of the testator, which is controlling in such case, that such legacy should revert to the estate. We cannot hold that it does, in the absence of a specific provision to effectuate that contingency. A consideration of significance in this construction is to be derived from the legal effect of the legacy upon the administration and settlement of the estate. There are no limitations whatever in this instrument that prevent a continuance of any other trust with reference to this subject than to execute the legacy according to its terms. The execution of the will was to be carried out with considerate speed. The balance of the estate was to be disposed of for other purposes, and, if the legacy is to revert, it must do so as a matter of law, rather than as the expressed intention of the testator, to be found anywhere in the instrument itself.

It was suggested that some force was to be given to the natural feelings of a father for his son, and that, as between the divorced mother and such son, the testator would naturally have preferred to dispose of his entire property to Henry Vanderwarker. There is nothing in the will that indicates this purpose. The testator was evidently thinking of the child and her interests as they might arise in the future,. rather than of her father; and he must have known, too, from certain considerations therein which need not be mentioned, that the mother was the best protector of the child, and naturally have thought that in the course of time Ethel, before her majority, or at least before arriving at the age of thirty, would marry; and the inference appears to be probable that the gift of

81 M.—14

this legacy, and its protection from depletion, was a wholesome provision for her protection in such a contingency, and probably excited by reasonable solicitude for her future welfare. And it is not easy to see how the probable and natural wishes of the testator could have been effected, without an intent to vest the legacy upon his death. If this reasonable supposition is to be drawn from the dying bequest of John Vanderwarker to his granddaughter, and the legacy was vested, the conclusion follows that the same was the property of Ethel, and upon her death descends to her heirs. Zartman v. Ditmars, 37 App. Div. (N. Y.) 173, 55 N. Y. Supp. 908; Lippincott v. Stottsenburg, 47 N. J. Eq. 21, 20 Atl. 361.

The order of the district court is reversed, and this case is remanded, with directions to the district court of Hennepin county to proceed in accordance with the views above expressed.