STATE OF IOWA ex rel. JOHN FLETCHER, Attorney-general, Appellant, v. WEBSTER COUNTY et al., Appellees.

No. 39311.

NOVEMBER 21, 1929.

*John Fletcher*, Attorney-general, and *C. J. Stephens*, Assistant Attorney-general, for appellant.

*John E. Mulroney, Helsell, McCall & Dolliver, Robert D. Blue, McGrath, Archerd & McGrath,* and *John Cunningham,* for appellees.

EVANS, J.—The insane patient is John Voog. He is a native of Norway. He came to this country sometime between 1908 and 1912. He was a laborer by occupation, and engaged in various  forms of labor for many different persons in many different localities. He never became a citizen of the United States. He was an unmarried man, and never acquired any visible property of his own. He had no continuous abiding place, but lived temporarily where he worked. In the early years of his arrival, he worked for different employers in Humboldt County. From the latter part of 1917 to June 20, 1919, he worked for different employers in the vicinity of Belmond in Wright County. During such period, he lived a part of the time in Iowa and part of the time in Minnesota. In March, 1919, he came from Minnesota and took employment with Bailey, a drainage contractor, in the vicinity of Belmond. Bailey maintained a camp for his workmen. Voog lived in such camp during his employment by Bailey until June 20, 1919, on which date he left for other parts. He said he was going to Fort Dodge. On July 27, 1919, he was taken into custody in Webster County as an insane patient, and committed to Cherokee.

Sections 3592, 3593, and 3594, Code, 1924, are as follows:

"3592. *Action to determine legal settlement.* When a dispute arises between different counties or between the board of control and a county as to the legal settlement of a person committed to a state hospital for the insane, the attorney-general, at the request of the board of control, shall, without the advancement of fees, cause an action to be brought in the district court of any county where such dispute exists, to determine such legal settlement. Said action may be brought at any time when it

appears that said dispute cannot be amicably settled. All counties which may be the place of such legal settlement, so far as known, shall be made defendants and the allegation of such settlement may be in the alternative. Said action shall be tried as in equity.''

''3593. *Judgment when settlement found within state*. The court shall determine whether the legal settlement of said insane person, at the time of the commitment, was in one of the defendant counties. If the court so find, judgment shall be entered against the county of such settlement in favor of any other county for all legal costs and expenses arising out of said proceedings in insanity, and paid by said other county. If any such costs have not been paid, judgment shall be rendered against the county of settlement in favor of the parties, including the state, to whom said costs or expenses may be due.''

''3594. *Order when nonresidence or unknown settlement appears*. If the court finds that the legal settlement of said insane person, at the time of commitment, was in a foreign state or country, or was unknown, an order shall be entered that said insane person shall be maintained in the hospital for the insane at the expense of the state. In such case the state shall refund to any county, with interest, all legal costs and expenses arising out of said proceedings in insanity and paid by said county. *Any decision by the court shall be final.*''

The result of the court's finding was to charge the State with the burden of maintenance of the patient. This order was predicated upon a finding of fact that Voog was not a resident of any one of the three counties named, and that his residence was unknown. In presenting the appeal, the attorney-general, as appellant, contends for a trial *de novo*. Only questions of fact are involved. Section 3592 provides that the case shall be tried in the district court ''as in equity.'' It was so tried, without a jury.

The appellees contend that the order entered in the district court was not appealable. This contention is predicated upon the last sentence of Section 3594. This is the first question which

 confronts us. This provision of the statute is somewhat ambiguous. A judgment of the court is ordinarily final. A statutory declaration to that effect would be quite superfluous. The appellees contend that this sentence can serve no other function than to terminate all proceedings when decision in the district court is reached. The proceeding provided by these sections is of a special and exceptional character. It provides for a mode of investigation of facts for the benefit of public officials, rather than for any litigation of private rights. The attorney-general, who brings the proceeding at the request of the board of control, is not required to tender any definite issue. He makes no allegation except in the alternative. The general nature of his petition is that of a mere inquiry. The method of the proceeding is summary and informal. Though the statute provides for a hearing before the district court, yet it could have provided such hearing before a non-judicial tribunal. If another tribunal had been provided before which the proceeding should be heard, then surely no appeal would lie from such tribunal to this court. In setting the proceeding for hearing before the district court, it was yet competent for the legislature to provide that a decision by that court should be the end of the procedure. Unless the statutory sentence under consideration was intended to accomplish just such a result, we are unable to discover or to surmise what possible function it could serve. Nor do we see any practical reason why it should be deemed necessary that a mere investigation of facts, upon conflicting evidence, as affecting the legal settlement of an insane patient, should be reviewed by this court.

We reach the conclusion that the intent of the statute is to forbid the further prosecution of the inquiry beyond the district court. In reaching this conclusion, we are not wholly without the aid of precedent. *Lampson v. Platt*, 1 Iowa (Clarke) 556. As affecting that case, the legislature had conferred appellate jurisdiction upon the district court to hear appeals from the county judge in certain matters. In that case it was provided that the aggrieved party before the county judge "may appeal therefrom to the district court of the proper county, *which shall have final jurisdiction over the matter.*" We construed that statute to render the decision of the district court nonappealable. The discussion in that case has much application to the question

before us. It becomes somewhat unsatisfactory, however, when we find it cited in both briefs, as supporting respectively their conflicting positions. We set forth the substantial part of its discussion, and for convenience of reference, we divide it into numbered parts (1) and (2):

"[1]   The language of the law is that said district court 'shall have *final jurisdiction* over the matter, and shall make such decision in the premises as justice and equity may require.' Did the legislature, by so providing, design such adjudication to be final and conclusive, and deny this court the power to review such cases on appeal? To our minds, the language of the law can scarcely admit of two interpretations. The language of the statute is, not that such district court shall have power in such cases to enter *final judgment,* but that it shall have *final jurisdiction.* If the term 'final judgment' had been used, the right to appeal, in view of the general provisions of the Code, could scarcely be questioned. Between judgment and jurisdiction, there is, however, a clear distinction. The one is the decision of the law, given by the court as the result of proceedings therein instituted; the other has reference to the power conferred to take cognizance of and determine causes according to law, and to carry the same into execution.

"[2]   The jurisdiction of the district court in this case is appellate, and not original. When thus acquired, the law says *it is final.* In other words, the power conferred by appeal on that court to take cognizance of this particular class of cases is final; and no power is given in the act to this court to review such determination; but, on the contrary, when it provides that the district court shall have final jurisdiction, it thereby inhibits the jurisdiction of any other appellate tribunal. *By the use of the word final, we think, the legislature designed that the hearing in the district court should be conclusive, decisive, and ultimate; and that the decision made, should be the end of the controversy.* And the nature of the proceeding and the subject-matter upon which it operates would seem to give additional strength to this conclusion. Here is a *contest of a special character,* in which the parties litigate their respective rights to a tract of land, belonging to neither, but the title to which is in the government. The state provides for its sale for a

specific purpose, and it is important that the funds arising shall be made available without delay. Under such circumstances, we can well see a reason for limiting the extent of the litigation, in order to effectuate a speedy sale of the lands, to carry out the objects and purposes of the law. It is claimed, however, that, by Section 1555 of the Code, this court has an appellate jurisdiction over all final judgments and decisions of the district court, and that, this being a final judgment, this court has jurisdiction under this general provision. The act of 1855, however, being subsequent to the Code, and of equal force and validity, obviates the force of this position. The general provision must yield to the subsequent legislation. The Code, by the general language, could confer the jurisdiction, was it not taken away by the limitation of power contained in the after-enacted statute. It is further insisted by counsel that, under the Constitution, the legislature has no power to deprive the defendant of a hearing in this court, and to sustain this view, we are referred to Art. 5, §3, which defines our jurisdiction. It is there provided that 'the Supreme Court shall have appellate jurisdiction only, in all cases in chancery, and shall constitute a court for the correction of errors at law, under such restrictions as the general assembly may by law prescribe.' The primary object of this provision was to define the character of the jurisdiction that was to be exercised, to wit: *appellate,* and not *original.* The district and inferior courts of the state have jurisdiction in such manner as may be prescribed by law; and while, for the most part, this jurisdiction is original, yet in other cases it may be, and is, as to the district court, also appellate. This court, however, only has appellate jurisdiction. How is this jurisdiction to be exercised, and what are the restrictions upon its exercise? The above provision of the Constitution expressly states that this court is to have this jurisdiction *'under such restrictions as the general assembly may by law prescribe.'* Here, then, the power is clearly given to the general assembly to restrict this appellate jurisdiction. If, under this provision, the legislature would not have the power to confer final jurisdiction on the district court in particular cases, and thus restrict the appellate jurisdiction of this court, it is difficult to perceive what, if any, power it would have in this respect. We think that power has been exercised in this

instance, and its propriety we have neither the right nor disposition to question.''

The appellant relies upon Part (1) of the foregoing; whereas the appellee relies upon Part (2) thereof. In Part (1), the opinion makes a distinction between ''final *judgment*'' and ''final *jurisdiction*.'' The statutory language in that case was ''final jurisdiction.'' The statutory language involved herein is ''final judgment.'' Clearly, this part of the discussion supports the position of appellant. As against this, the actual decision of the court is contained in Part (2). The discussion in Part (1) is dictum. It simply sets forth what the decision would be if the language of the statute were different. The real decision was that the legislature had power to terminate jurisdiction over the case in the district court, and thereby to render the order of the district court nonappealable, notwithstanding the general provision of the statute conferring a right of appeal from all orders of the district court. That is, the special controls the general.

The distinction made in Part (1), as between *''judgment''* and *''jurisdiction,''* including the discussion thereon, is entitled to great respect and careful consideration in the present case; but it is not binding as a precedent. If we deem it sound, it should be followed; otherwise not. That there is a distinction between the term ''judgment'' and the term ''jurisdiction'' is readily to be conceded. The real question is whether such distinction has a controlling effect upon the question before us. The statutory language under our consideration is: ''Any *decision* by the court shall be *final.*'' We need lay no stress upon the possible distinction between the terms ''decision'' and ''judgment.'' This section of the statute, 3594, makes no provision for any *judgment* in the district court. It simply provides that, in the event that no settlement is found for the insane patient in any county, ''an order shall be entered that said insane person shall be maintained in the hospital for the insane at the expense of the state.'' The only real decision to be made by the court is whether the insane patient has a settlement in any county. If that finding be in the negative, the order for the maintenance of the patient at the hospital is a mandate of the statute. The *Lampson* case is made to turn upon the termination of jurisdiction with the finding of the district court. Such is likewise the

question herein. If the decision of the district court is to become *final*, how can *jurisdiction* continue? Of course, in legal parlance, it is true that an adjudication, as such, is necessarily *final*. But it is also true that the right of appeal from a judgment is contradictory to its finality. The legislative mandate that the decision of the district court shall be final can have no other possible meaning than that such decision shall mark the termination of procedure. This is only another way of saying that the limit of jurisdiction conferred by the statute has been reached by decision in the district court. Nor should we lose sight of the fact that the statute under consideration is not one which deals with private rights. The procedure provided does not purport to deal with private rights. It purports to deal with some of the humane functions of the state as a sovereignty. Public burdens have been assumed by the state, and these are subject to distribution among the component parts of the state. The duties involved are purely public duties. The procedure provided is in the nature of an inquiry of fact, for the guidance of these public bodies in the performance of their humane duties. It bears some analogy to an ex-parte proceeding. Whatever duties or obligations are involved are all statutory. The methods of relief are all statutory. None of the questions presented are *justiciable*, in the sense in which such term is applied to ordinary litigation. We reach the conclusion that the word ''final,'' as used in the statute, is intended to terminate the inquiry, and thereby to declare the end of jurisdiction.

The appeal will be—*Dismissed*.

ALBERT, C. J., and FAVILLE, DE GRAFF, and KINDIG, JJ., concur.