STATE OF IOWA ex rel. JOHN M. RANKIN, Petitioner, v. DEAN W. PEISEN, Judge, Respondent.

No. 46282.

July 27, 1943.

John M. Rankin, Attorney General, and Jens Grothe, Assistant Attorney General, for petitioner.

D. W. Dickinson, County Attorney, for respondent.

Ralph H. Goeldner, of Sigourney, for Keokuk County.

GARFIELD, J.—The attorney general, pursuant to section 3592, Code, 1939, brought suit in equity in the district court of Hardin county to determine the legal settlement of Ida May and Grace Wessels, feeble-minded girls in the Glenwood State School. The object of the suit was to determine the liability under Code section 3477.1 of Hardin and Keokuk counties, defendants thereto, for the care of the girls. The case was submitted upon stipulated facts to the respondent judge, who held that the legal settlement of the girls was not in either county and consequently neither was in any way liable for their care in the state school. The attorney general seeks to review that decision in this certiorari action.

In the equity suit it was stipulated that: Evert and Anna Wessels were the parents of the twin girls in question, born about April 1934; they were residents of Hardin county on September 10, 1935, when a petition was filed in the district court of that county, as a juvenile court, asking that the parents be deprived of the custody of their six children, including the twin girls; pursuant to notice, a hearing was had on this petition; the court found that the children were not being kept in

a fit and proper home, and on September 26, 1935, the twins were committed to the custody of a Mr. and Mrs. Sawin, who lived in Hardin county. The order provided that Hardin county should pay the persons to whom the children were committed a reasonable amount for their care.

On December 16, 1935, the Hardin county director of relief applied to the juvenile court for an order committing the twins to the American Home Finding Association of Ottumwa, Iowa, where they could be placed ''at very little expense to Hardin county.'' On the same day an order to that effect was made. On December 30, 1935, the twins were taken to the orphans' home in Ottumwa, to which they had been committed. Hardin county paid $50 to this home for the care of the twins and a third child of another parent. On January 4, 1936, the girls were placed by the Ottumwa home with a Mr. and Mrs. Wyllie in Keokuk county. The girls continued to live with the Wyllies, and on May 27, 1937, they petitioned the district court of Keokuk county to adopt the girls. Decree of adoption was entered on the same day, the Ottumwa orphans' home having filed its written consent.

On March 12, 1942, the Wyllies filed their petitions in the same Keokuk county court asking to have the adoptions annulled because, unbeknown to the petitioners, the girls were feeble-minded as a result of an injury at birth. (See Code section 10501.7.) On March 26, 1942, decrees were entered under which the adoption of each girl was ''annulled, cancelled and rendered of no legal force and effect,'' and each was placed in the guardianship of the state board of social welfare, at whose request the girls were thereby committed to the Glenwood State School. The Wyllies delivered the girls to the institution at Glenwood on April 2, 1942. It was further stipulated upon the trial in December 1942, that the parents, Evert and Anna Wessels, had been residents of Minnesota for more than a year prior thereto.

The respondent judge held, in effect, that the settlement of minors is the same as that of their father, either natural or adoptive; that these girls did not have a legal settlement in Keokuk county because of the annulment of the adoption,

nor in Hardin county because of the residence and presumptive legal settlement in Minnesota of the father.

I. Respondent contends that his decision is not reviewable by certiorari.

"The writ of certiorari may be granted * * * where an inferior tribunal * * * exercising judicial functions is alleged to have exceeded his proper jurisdiction, or is otherwise acting illegally, and there is no other plain, speedy, and adequate remedy." Code section 12456.

There is no claim that respondent acted in excess of jurisdiction, but it is contended he acted illegally in that the stipulated facts do not justify the legal conclusion arrived at.

Code section 3594 provides that in such an action as the attorney general brought: "Any decision by the court shall be final." We have held this means that no appeal lies from the decision of the lower court in such a case. State ex rel. Fletcher v. Webster County, 209 Iowa 143, 227 N. W. 595; State ex rel. Rankin v. Woodbury County, 231 Iowa 356, 1 N. W. 2d 223. Aside from certiorari, therefore, there appears to be "no other plain, speedy, and adequate remedy." Luke v. Civil Service Comm., 225 Iowa 189, 192, 279 N. W. 443. In the recent Woodbury County case, supra, we intimate that such a decision may be reviewable by certiorari.

We think respondent's decision here, the facts having been stipulated and without dispute, is reviewable by certiorari. The case involved law questions only. If petitioner's contention in the equity case was sound, respondent acted illegally, within the meaning of the certiorari statute, in rejecting it. It was not a mere erroneous ruling made during the course of hearing the case. See Luke v. Civil Service Comm., 225 Iowa 189, 194, 279 N. W. 443, and cases cited. Had the decision involved merely disputed fact questions for which there was sufficient support in the evidence, certiorari would not lie. The function of the writ is not to review questions of fact where there is substantial evidence to support the decision. Lineberger v. Bagley, 231 Iowa 937, 941, 2 N. W. 2d 305, and authorities cited.

Our conclusion finds support, on principle, in the cases holding that certiorari lies to review a decision on fact ques-

tions where there is no competent evidence to support the finding and there is no other adequate remedy. In such event, the question becomes one of law. See City of Des Moines v. Board, 227 Iowa 66, 69, 70, 287 N. W. 288, and cases cited.

    II. By section 2, chapter 135, Acts Forty-ninth General Assembly, Code sections 3477.1 to 3477.7 in chapter 172, "insofar as applicable," apply to chapter 170, entitled "Glenwood State School." Under section 3477.1, as amended by section 2, chapter 135, Forty-ninth General Assembly, cost of support in the Glenwood school:

"* * * shall be paid:

"1. By the county in which the patient [inmate] has a legal settlement provided that for the purpose of this chapter a minor child must have physically resided in the county at least one year for same to be deemed the county of his settlement.

"2. By the state when such person has no legal settlement in the state or when his settlement is unknown. The residence of any patient [inmate] shall be that existing at the time of admission."

The ultimate question for respondent to decide was whether the legal settlement of the twins was in either Hardin or Keokuk county at the time of their admission to Glenwood.

    Code section 3828.088, paragraph 5, provides:

"Legitimate minor children take the settlement of their father, if there be one, if not, then that of the mother."

At the time of the juvenile court proceedings in Hardin county in 1935, the settlement of the Wessels and their children was in that county. When Mr. and Mrs. Wyllie, in Keokuk county, duly adopted the girls, we think their settlement was changed to that of Mr. Wyllie, the father by adoption. This would seem to follow from Code section 10501.6. See Inhabitants of Waldoborough v. Inhabitants of Friendship, 87 Maine 211, 32 A. 880; Washburn v. White, 140 Mass. 568, 5 N. E. 813; Kennan on Residence and Domicile, 594, 595, section 324. When, however, for statutory cause (see section 10501.7), the adoptions of the girls were annulled, we think they lost their settlement in Keokuk county. The effect of the annulment

decrees was to hold that the relation of parent and child by adoption never legally existed. This removed the sole basis for the settlement of the girls in Keokuk county. It has been held that the settlement of a woman whose marriage was annulled because of her mental incapacity is not affected by the marriage. Reading v. Ludlow, 43 Vt. 628. See, also, Winslow v. Troy, 97 Maine 130, 53 A. 1008. By reason of Code section 3828.088, paragraph 3, the girls never acquired a settlement in Wapello county in which the Ottumwa orphans' home is situated.

There seems to be little controversy between the parties on the above propositions. However, the parties do not agree as to the effect on the legal settlement of the girls of the order of the juvenile court depriving the Wessels of the custody of their children. Petitioner contends that by reason of this order the father could not thereafter change the girls' settlement. Respondent held that the order did not prevent the father's changing the settlement of the girls by his removal from the state.

In this connection, Code section 3828.089 provides:

"A legal settlement once acquired shall so remain until such person has removed from this state for more than one year or has acquired a legal settlement in some other county or state."

From the stipulated facts it is not clear that the father removed from Iowa more than a year before April 1942, when the twins were committed to Glenwood. The fair inference from the stipulation is merely that such removal occurred more than a year before the trial in December 1942. Assuming, however, that at the time of such commitment the father had lost his settlement in Hardin county, under section 3828.089, by removal from the state for more than a year, we think the girls' settlement was not thereby changed but that it remained in Hardin county. It is clear that no act of these feeble-minded infants, who were virtual wards of the juvenile court, could affect their settlement. Kennan on Residence and Domicile, 597, section 326; id. 600, section 329.

By the order of the juvenile court in September 1935, the father and mother were deprived of the right to custody and

control of their children. If the girls had then been committed to the Glenwood school, clearly no subsequent act of the father could have changed the existing settlement of the girls in Hardin county, because such commitment would have deprived the father of the custody and control of the girls and broken the family unity. But these results were as clearly and effectively accomplished by the order of the juvenile court based on the finding that the home of the parents was unfit for their children. The rule of section 3828.088, paragraph 5, that minors take the settlement of their father had its origin in the accepted theory of the family relation. Polk County v. Clarke County, 171 Iowa 558, 560, 561, 151 N. W. 489. Where, as here, the family ties are broken and the father is deprived by court order of the right to custody and control of the children, the reason for the rule no longer exists. The settlement of the children is then not affected by a subsequent act of the father which might change his own settlement.

Our holding that a father who has been legally deprived of the custody of his children can no longer control their settlement finds support in decisions that the settlement of a wife who has been confined in an asylum or abandoned by her husband remains unchanged by any subsequent act of the husband. Breaking the family unity destroys the premise that the settlement of the father or husband controls that of members of the family who have been legally separated from him. Polk County v. Clarke County, 171 Iowa 558, 561, 151 N. W. 489; Scott County v. Townsley, 174 Iowa 192, 194, 156 N. W. 291; State ex rel. O'Connor v. Clay County, 226 Iowa 885, 892, 893, 285 N. W. 229.

It has been held that when parents are divorced and the custody of children awarded to the mother, the legal settlement of the mother, not the father, controls that of the children. Board of Commissioners of Summit County v. Board of Commissioners of Trumbull County, 116 Ohio St. 663, 158 N. E. 172. It has also been held that a minor, not a member of the father's family nor under his control, does not take the derivative settlement of the father. Town of Tunbridge v. Eden, 39 Vt. 17.

Our holding also finds support in the rule that the domi-

cile of a father who has been legally deprived of the custody of his child does not control the child's domicile. The general rule that the domicile of an infant is that of his father rests upon the idea of parental custody of the infant, and when the reason for the rule fails the rule is not applied. Jensen v. Sorenson, 211 Iowa 354, 366, 233 N. W. 717; Fox v. Hicks, 81 Minn. 197, 83 N. W. 538, 50 L. R. A. 663; White v. Bickford, 146 Tenn. 608, 244 S. W. 49, 26 A. L. R. 129; 17 Am. Jur. 627, section 59; 28 C. J. S. 21, 22, section 12b(2); Restatement of the Law, Conflict of Laws, 57, section 32; annotation 53 A. L. R. 1160, 1162, 1163. We are not to be understood as overlooking the distinction between "domicile," "residence," and "legal settlement." The terms are not synonymous. In re Newhouse, 233 Iowa 1007, 9 N. W. 2d 372, 375, and cases cited; Kennan on Residence and Domicile, 588, 589, section 319. But the reasoning of the above authorities on domicile seems to be applicable here.

The respondent should have held that the settlement of the girls remained in Hardin county. He is directed to enter judgment accordingly. His findings and decree are annulled and the writ of certiorari is sustained.—Writ sustained.

BLISS, OLIVER, HALE, SMITH, and MANTZ, JJ., concur.