POLK COUNTY, Appellant, v. CLARKE COUNTY, Appellee.

**PAUPERS:** Legal Settlement of Insane Wife—Removal of Husband —Effect. The legal settlement of a wife not abandoned by her husband follows that of her husband. (Sec. 2224, Code.) The reason is that the husband has the right and authority to control the abiding place of his wife, in order to meet his duty as head, provider and support of the family. The law ends, however, where the reason ends. The legal settlement of an insane wife, committed to the Hospital for the Insane from the county of her residence and legal settlement, remains unchanged by any act on the husband's part so long as such public restraint continues.

PRINCIPLE APPLIED: A husband and wife had their residence and legal settlement in Polk county. The wife became insane and was duly committed to the State Hospital for Insane, where she remained six years, and was then returned to the authorities of Polk county as incurable. She was then committed to the Polk County Hospital for Insane. Three years after she was returned as incurable, her husband removed from Polk county to Clarke county, and thereafter maintained his residence in Clarke county, though he did not abandon his wife. Twenty-six years later, Polk county brought suit against Clarke county, under the statute governing support of paupers, on the theory that the legal settlement of the insane wife followed her husband into Clarke county. *Held,* the legal settlement of the wife remained in Polk county.

*Appeal from Clarke District Court.*—HON. THOS. L. MAXWELL, Judge.

TUESDAY, MARCH 16, 1915.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

ACTION at law to recover for moneys expended by the plaintiff in the care and support of an insane person alleged

to have had a legal residence in the defendant county. The court having sustained a demurrer to the petition, the plaintiff appeals.—*Affirmed.*

*A. D. Pugh,* for appellant.

*Henry Stevens,* County Attorney, and *O. M. Slaymaker,* for appellee.

WEAVER, J.—Stated as briefly as practicable, the case made by the petition is as follows: On October 18, 1878, one Frances E. Thompson, wife of J. B. Thompson, both of whom then had their residence and legal settlement in Polk county, was adjudged insane, and as such was duly committed to the State Hospital for the Insane at Mt. Pleasant, where she remained until April 19, 1884, when she was remanded, as incurable or unimproved, to the custody of the proper officers of Polk county, and was by them committed to the hospital provided for the insane in that county where she has ever since remained, being at all times there kept, cared for and maintained at said county's expense. On or about August 1, 1887, J. B. Thompson, husband of the insane person, removed from Polk county to Osceola, in Clarke county, where he acquired and has ever since maintained a legal settlement. During all the time since Frances E. Thompson was adjudged insane, the said J. B. Thompson has been her lawful husband and he has never abandoned her. On September 27, 1913, the commissioners of insanity of Polk county undertook a legal inquiry into the question of the legal settlement of Frances E. Thompson and made a finding that her settlement then was, and since August 1, 1887, had been, in Clarke county. On the same day, September 27, 1913, the clerk of the district court of Polk county sent written notice to the auditor of Clarke county of the above mentioned findings of the commissioners of insanity. To this notice, the auditor of Clarke county responded, denying the correctness of said

PAUPERS: legal settlement of insane wife: removal of husband: effect.

finding and stating that after due investigation he had found that Frances E. Thompson had not then and had never had legal settlement in Clarke county, and that Clarke county was in no manner liable for the expenses which had been or might be incurred for her care or maintenance. The plaintiff further alleges that the actual, reasonable and necessary expense of the care and support given by it to the said Frances E. Thompson has been $32.50 per quarter, or $130 per year; that it has presented its claim and demand therefor to the amount of $3,400.21 to the board of supervisors of Clarke county and that such claim has by said board been disallowed and rejected. Upon the foregoing statement of facts, judgment is asked against defendant for the amount of plaintiff's claim with interest and costs. The defendant demurred to the petition upon various grounds, of which we need here notice only the following: The petition shows that Frances E. Thompson never acquired a legal settlement in Clarke county. The trial court sustained the demurrer generally, and plaintiff declining to amend and electing to stand upon its petition as filed, the court dismissed the action and entered judgment against plaintiff for costs.

The main question raised by the demurrer and the one to which we direct our attention is whether the facts as stated and admitted show the legal settlement of the insane woman to be in Clarke county. The statute relating to the relief of the poor provides (Code Sec. 2224) that for the purposes of that act the legal settlement of a wife who has not been abandoned is that of her husband. That rule has also been applied by this court in certain cases arising under the statute for the care of the insane. *Scott County v. Polk County,* 61 Iowa 616; *Washington County v. Polk County,* 137 Iowa 333.

Neither of the cited cases, however, is in principle parallel with the one presented by this record, and so far as our precedents are concerned, the question before us is one of first impression. The theory of the statute, Code Sec. 2224, making the settlement of the wife that of the husband, has

its origin in the general and accepted theory of the family relation.   Ordinarily speaking, a family consists of husband, wife and dependent children, if any, and the husband is its head.   On him rests the duty of providing the home and the support of the household, and with him rests the authority to select the place of residence.   When, for business or other reasons, he removes from one county to another, wife and children go with him,—the unity of the family remains unbroken.   Wherever he establishes a home, there he is entitled to, and ordinarily has, the society, comfort, and service of those who, with him, constitute the family circle.   The statutory recognition of this fact operates as a protection both to the county from which he removes and the one to which he goes.   He cannot shift his responsibility by crossing the boundary line of his county; and wherever he settles, the local authorities have jurisdiction to compel his observance of the duties which the law has imposed upon him.   There is, then, a large measure of justice and reason in the establishment of a rule by which, so long as the legal unity of the family remains unbroken and the reciprocal obligations of support and service are unimpaired, the law looks alone to the settlement of the family head as determinative of the settlement of those who belong to his household.   But is this rule to be carried to the extent of saying that, where the wife is adjudged insane in the county of her admitted settlement and is taken into the custody of the law under a commitment by which she is deprived of her liberty indefinitely or for life, the subsequent removal of the husband alone to another county and the acquirement by him of a settlement there works a change in the legal settlement of the wife and renders the latter county chargeable with the cost of her support in the hospital where she is confined?   We are of the opinion that the statute is not fairly open to that construction.   In the first place, as we have already noted, Code Sec. 2224, which defines the legal settlement of a wife, is found in the chapter relating to the care for the poor.   If, by analogy,

we apply the same rule to the care of an insane wife—and we have so applied it—the analogy has its limitations and should not be carried beyond those cases where the reasons underlying the rule are alike in both. To some extent the statutes for the care of the poor and of the insane have the same charitable purpose of relieving human suffering and promoting the general welfare of society; yet the provision for the forcible restraint and isolation of the insane has the further important purpose of safeguarding not only the life of the patient but also the lives of those brought in contact with persons thus sadly afflicted. Ordinarily, the extension of poor relief is not made at the cost of disrupting the family thus aided. On the other hand, care of the insane by the state or county authorities by restraint in institutions provided for that purpose necessitates such disruption. The insane wife, while in name still a member of the husband's family, is no longer a member of his dependent family. She is the ward of the state. The husband has no control over her and is powerless to direct the manner or place of her restraint. She has neither intelligent volition nor liberty of action. She cannot follow the husband to his new place of residence. The duty which would rest upon her as a sane wife not under restraint, to go where he goes and abide where he abides,—the duty which lies at the foundation of the rule making his settlement her settlement,—is wholly lacking; and in the absence of an express statutory provision that the settlement of a wife duly found insane in the proper county and thereafter restrained in the hospitals or asylums provided for that purpose shall follow the settlement of the husband as he may wander from county to county, we do not feel authorized to affirm such a rule or to establish such a precedent. In short, we hold that the legal settlement of an insane wife committed to the insane hospital from the proper county remains unchanged by any act on the husband's part, so long as the restraint of the wife under such commitment continues. Had the wife been discharged or permitted to

return to her family—even though uncured—and a new set-tlement acquired under such circumstances, a very different question would arise, should it thereafter be necessary to renew the restraint.

It is proper to note in conclusion that the adoption of the theory urged by counsel for plaintiff would be so prolific of hardship and injustice to counties to which the worse than widowed husband in such case might wander that the court would unhesitatingly reject it unless it be found justified by some clear expression of legislative authority. The county to which the husband goes would be practically helpless to protect itself against liability. It cannot be presumed to inquire into or know the family history of every person proposing to make a home within its borders, and if, as in the case at bar, such bills may accumulate for more than twenty-six years without notice, express or implied, and then the collection thereof be enforced, it might well become a source of embarrassment to many counties. Indeed, if *argumentum ad hominem* is a proper consideration in disposing of a question of law, Polk county, having within its juris-diction the state's largest city, to which much of the human wreck and driftwood of the state at large naturally centers, might easily find a favorable decision of this controversy furnishing a precedent upon the question of the legal settle-ment of insane wives and family dependents, of which it would gladly be relieved in the future.

Having reached the conclusion indicated upon the most vital issue raised by the demurrer, and it being decisive of the case, we do not undertake to pass upon the effect of the statute of limitations, or the necessity or sufficiency of notice to the defendant county, to which counsel have directed a portion of their arguments. For the reasons stated, the rul-ing and judgment of the district court are—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.