STATE OF IOWA ex rel. BEN J. GIBSON, Appellee, v. STORY COUNTY, Appellee, et al., Appellant.

MARCH 12, 1929.

*George E. Campbell*, for Jasper County, appellant.

*John Fletcher*, Attorney-general, and *Earl F. Wisdom*, Assistant Attorney-general, for plaintiff, appellee.

*Addison & Smedal*, for Story County, appellee.

WAGNER, J.—This is a contest between Story County and Jasper County as to their liability for the costs and expenses attending the commitment, investigation, care, and support of W. M. Robinson, an insane person, in one of the hospitals for the insane. The action was brought by the attorney-general, under the provisions of Section 3592 of the Code of 1924, which provides that, when a dispute arises between different counties, or between the board of control and a county, as to the legal settlement of a person committed to a state hospital for the insane, the attorney-general, at the request of the board of con-

trol, shall, without the advancement of fees, cause an action to be brought in the district court of any county where such dispute exists, to determine such legal settlement.

The family of W. M. Robinson consisted of himself and wife. Prior to February 14, 1925, Story County was the place of residence and also of legal settlement of Robinson. On said date, he removed to Jasper County. There can be no question, under the record, that, after February 14, 1925, Robinson was a resident of Jasper County. Approximately two months after Robinson became a resident of Jasper County, he was arrested and incarcerated in the county jail of Story County, and charged by county attorney's information with a crime alleged to have been committed in Story County. He remained in jail until the 30th day of June, 1925, when he was found by the commissioners of insanity of Story County, upon proceedings legally brought before said officers, to be insane, and under their order, committed for treatment to the hospital for the insane at Clarinda; and since that time, he has been confined in said institution. In accordance with the provisions of Sections 3552 and 3582 of the Code, the commission found and entered of record that the legal settlement of Robinson was in Jasper County, and certified its finding in that respect to the superintendent of the hospital and to the county auditor of Jasper County. Jasper County, on August 4, 1925, acting by order of its board of supervisors, filed a written notice with the commissioners of insanity of Story County, stating, in effect, that it disputes the finding of said commissioners as to the legal settlement of Robinson. It also addressed separate notices to the superintendent of the hospital and the county auditor of Story County, stating its dispute in the aforesaid respect, and said officers acknowledged receipt thereof. It was stipulated during the trial that no notice other than the foregoing was given. In other words, it was stipulated, in substance, that no notice as provided for by Section 5315 of the Code was served upon Robinson, to prevent him from acquiring a settlement in Jasper County. No portion of the costs and expenses relative to the commitment and care of the ward has been paid by either county.

The court found that Robinson acquired a residence in Jasper County on February 14, 1925, and that he gained a legal settlement in said county on February 14, 1926; that, prior to

February 14, 1926, his legal settlement was in Story County; that Story County is liable for the expenses of his commitment and care for the period of time from June 30, 1925, to February 14, 1926, and that Jasper County is liable for the legal expenses for his care and keep at said hospital from and after February 14, 1926,—and rendered judgment accordingly. From this action by the trial court, Jasper County appeals.

The question is: Has Jasper County, the appellant, any just ground of complaint as against the judgment entered? We answer in the negative. The court correctly found in accordance with its contention that the legal settlement of Robinson on June 30, 1925, was in Story County. But this does not settle the entire controversy. The appellant, relying upon Section 3593 of the Code, contends that the only thing which the court has to determine is the place of settlement at the time of the commitment. Under said section, if the appellant had paid any part of the costs and expenses for the care of the ward during the time that his legal settlement was in Story County, then it would have been entitled to a judgment against the latter county for said amount; but the place of settlement at the time of the commitment is not the only question which properly comes before the court. Section 3581 of the Code provides:

"The necessary and legal costs and expenses attending the arrest, care, investigation, commitment, and support of an insane person committed to a state hospital shall be paid: (1) By the county in which such person *has a legal settlement*." (The italics are ours.)

It will be observed that said expenses shall be paid by the county where such person has a legal settlement. This does not impose the entire burden upon the county where the settlement of the ward was at the time of the commitment, provided a legal settlement has been established in another county since that time. Section 3592 of the Code provides:

"When a dispute arises between different counties or between the board of control and a county as to the legal settlement of a person," etc.

This language does not limit it to the legal settlement at the time of the commitment, but means the legal settlement of the

ward at any time that may be in dispute. This action was begun in August, 1926, and the petition of the attorney-general prays that the legal settlement of the ward at the time he was committed to the hospital for the insane, and at the present time, be determined, and that the court determine whether said legal settlement was and is Jasper County or Story County. Therefore, under the law and the petition, the questions which the court was called upon to determine were: Where was, and now is, the place of legal settlement of the ward? The mere fact that the place of legal settlement was in Story County at the time of the commitment is not determinative that said county was the place of legal settlement at the times of the commencement of the action and entry of judgment. We have held that the legal settlement for an insane person is the same as the legal settlement for a poor person under our statutory law relative to the poor. See *Scott County v. Polk County*, 61 Iowa 616. One year's residence is necessary to effect a legal settlement. Section 5311 of the Code; *Scott County v. Polk County*, supra. It is provided by Section 5315 of the Code that persons going from one county to another who are county charges, or are likely to become such, may be prevented from acquiring a settlement by a warning to depart therefrom, given by the authorities of the county in which such persons are found. It is stipulated, as aforesaid, that no such notice was served upon the ward. Although Robinson's legal settlement was in Story County at the time of the commitment, his residence at that time was in Jasper County, and a residence of one year in Jasper County made that county the place of his legal settlement. Residence and legal settlement are not synonymous terms. It may be one in one county and the other in another; but continuous residence for one year without notice of warning to depart, makes the place of residence the place of legal settlement. The mere fact that he is in the asylum in another county does not change his residence during the period of commitment. *Scott County v. Townsley*, 174 Iowa 192; *Polk County v. Clarke County*, 171 Iowa 558. A person moving from one county and taking up his residence in another county, after the expiration of one year thereafter, acquires a legal settlement in the latter county, although during the major portion of the year he has been committed to the hospital for the insane. *Washington County v. Mahaska County*, 47 Iowa 57. In said case, this court declared:

"Any person having attained majority, and residing in any county of the state one year without being warned to depart from the county, acquires a settlement in such county. * * * She [the insane person] was not warned to depart from the county until more than a year thereafter; but she was taken insane before the expiration of a month, and was removed to the hospital for the insane, in Henry County, and remained at such hospital until more than a year had elapsed. The question presented is whether her insanity and absence from Washington County in the hospital in Henry County prevented her from acquiring a legal settlement in Washington County, her residence having been commenced in the county prior to her insanity and removal, and no warning having been served upon her to depart. It is evident that no length of time spent by her at the hospital would give her a residence in Henry County [the location of the asylum]. She did not, then, in any legal sense, commence residing in Henry County. By reason, then, of her removal to that county, no interruption of her residence in Washington County took place. The case is not different from what it would have been if she had been treated at the expense of Washington County, within the county."

It was there held that she was a resident of Washington County, and that, after the expiration of one year, that county became the place of her legal settlement, and there could be no recovery by way of expense for her care thereafter by said county from the county of her former residence and settlement. Said case is controlling as to the matters in controversy and involved in this appeal.

It is true that, in *Polk County v. Clarke County*, supra, we held that Section 2224, Code of 1897 (now Paragraph 2 of Section 5311, Code of 1927), which provides that a married woman has the settlement of her husband, if he has one in this state, does not apply in determining the legal settlement of an insane wife committed to the asylum for a number of years, and remanded as incurable, and committed to the hospital for the insane in the county of her residence and settlement, when the husband thereafter changes his residence to another county and obtains a legal settlement therein. We likewise held in *Scott County v. Townsley*, 174 Iowa 192. In both of the foregoing cases, the wife could not follow and perform the duties

of a member of her husband's family. As applied to the facts in the *Polk County* case we said:

"In short, we hold that the legal settlement of an insane wife committed to the insane hospital from the proper county remains unchanged by any act on the husband's part, so long as the restraint of the wife under such commitment continues."

The two cases last above cited are clearly distinguishable from *Washington County v. Mahaska County*, supra. In the latter case, the wife was deserted by the husband. Under such circumstances, she may acquire a settlement as if she were unmarried (see Paragraph 2, Section 5311 of the Code). She took up her residence in Washington County. In less than a month she became insane, and, no notice of warning to depart from the county having been served upon her, she was held to have acquired a legal settlement in Washington County. Likewise, in the instant case, Robinson, while sane, acquired a residence in Jasper County. No notice of warning to depart therefrom has been served upon him.

"The residence of any person found insane who is an inmate of any state institution shall be that existing at the time of admission thereto." Section 3581 of the Code of 1924.

The instant case is clearly controlled by *Washington County v. Mahaska County*, supra.

Robinson, having taken up his residence in Jasper County on February 14, 1925, and having been a resident of said county ever since, on February 14, 1926, acquired a legal settlement in Jasper County; and under the law, the county of legal settlement as it now is, is liable for the expense of his care since the time when the latter county became the place of his legal settlement.

The judgment of the trial court is hereby affirmed.—*Affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur.