STATE OF IOWA ex rel. EDWARD L. O'CONNOR, Attorney General, Appellee, v. CLAY COUNTY et al., Appellees, and O'BRIEN COUNTY et al., Appellants.

No. 43620.

MARCH 9, 1937.

OPINION ON REHEARING, APRIL 4, 1939.

E. A. Jinkinson and T. E. Diamond, for appellants.

John H. Mitchell, Lehan T. Ryan, Gilbert S. James, and Cornwall & Cornwall, for appellees.

OLIVER, J.—This appeal having been resubmitted, following the granting of petition for rehearing, the original opinion filed March 9, 1937, and published in 271 N. W. 892, is withdrawn and this opinion is substituted therefor.

Shortly prior to January 1, 1917, John S. Schneider, his wife, Katie Schneider, and their three children moved from a farm in Clay county, Iowa, where they had resided for approximately two years, to the town of Moneta, O'Brien county, Iowa. While they were residing at Moneta, an information of insanity was sworn out against Katie, and, on May 16, 1917, she was adjudged insane by the commissioners of insanity of O'Brien county and committed to Cherokee State Hospital for the insane. Although the warrant of admission, executed by the clerk of the commissioners, recited "the legal settlement of the said Mrs. Katie Schneider is found to be in Clay county, Iowa,

but a charge of O'Brien county, Iowa, until legal settlement is determined'', it does not appear that the commissioners made the finding required by section 2266 of the Code of 1897 then in effect, ''whether the legal settlement of such person is in their county, and if not, where it is, if ascertained''.

On the date of said commitment the auditor of O'Brien county wrote the auditor of Clay county, by registered mail, saying:

''Enclosed herewith Notice Regarding Pauper in the case of John Schneider, Sr. and family. The mother was today adjudged insane by our county Insane Commission and committed to the Cherokee State Hospital. The family consists of John Schneider, Jr., age 7, Mary, age 6, Joe, age 3, and an infant aged four months. The latter child * * * was taken to our County Hospital * * *. The father is taking the other children home temporarily but something will have to be done with them other than this, since he * * * is forced to leave them alone and also is in very destitute circumstances. It is really a very pitiful case, and I trust that you will see that prompt action is taken.''

Subsequently the notice referred to in said letter appears to have been lost and, by reason of long lapse of time, proof of its contents was not available at the trial.

On June 2, 1917, another letter was written by the O'Brien county auditor to the Clay county auditor stating:

''In accordance with your instructions today over the telephone I have issued our county warrant * * * for $61.95, account nursing and expense of Helen Schneider. Trusting you will bring this matter to the attention of your Board * * * .''

This bill was thereafter paid to O'Brien county by Clay county.

Again on June 11, 1917, he wrote:

''Enclosed you will please find bills for the Schneider baby brought me today from the County Hospital * * * amount $86.73. Please bring these to the attention of your Board for action.''

On July 27, 1918, more than a year later, the auditor of

O'Brien county again wrote the auditor of Clay county as follows:

"I am enclosing statement of the cost of commitment expense in the insane case of Mrs. Katie Schneider who was committed from this county on the 16th day of May, 1917. This patient is a charge of your county and this commitment expense should be paid by you. Kindly place this matter before your board at their next meeting for allowance."

This bill, amounting to $50.25, was paid by Clay county to O'Brien county in December 1918.

The foregoing summarizes the evidence of the various acts or doings of each county relative to the Schneiders and material hereto. The records of neither county appear to contain further information.

The ledger account in Cherokee State Hospital showed Katie Schneider, legal settlement, Clay county, and Clay county without protest or objection from time to time paid to the State Hospital a total of $3,640.37 to cover expenses for her support from her commitment to September 30, 1931. Shortly thereafter Clay county questioned its liability for such support and refused to continue said payments. On July 11, 1932, the Attorney General instituted this action in equity against Clay county and O'Brien county under section 3592, Code of 1931, to determine which county was liable for the support of Katie Schneider. Original notice appears to have been served upon O'Brien county, March 1, 1935. Each of said counties answered denying liability and Clay county also prayed judgment against O'Brien county for the moneys expended by it for the support of Katie Schneider at the State Hospital. The cause was thereafter tried and on October 5, 1935, the district court found that the legal settlement of Katie Schneider, after January 1, 1918, was in O'Brien county, entered judgment for the State of Iowa against O'Brien county for her support from and after September 30, 1931, and ordered said county to continue to pay for the same as long as she should remain in said hospital. From this portion of the judgment and decree O'Brien county has appealed. The decree also denied recovery to Clay county from O'Brien county for the sums expended by it for her support from 1918 to September 30, 1931, from which portion Clay county has appealed.

■ I. Section 3581, Code of Iowa 1935, provides that the necessary costs and legal expenses for commitment and support of an insane person in a state hospital shall be paid by the county in which such person has a legal settlement. This has been the law for many years, although the foregoing statute was not enacted in its present form until 1924.

The district court found, and Clay county concedes that the legal settlement of Katie Schneider was in Clay county until about January 1, 1918. The controversy as to liability covers the period subsequent to January 1, 1918. Each county contends the legal settlement of Katie Schneider and consequent responsibility for her support was in the other county at all times subsequent to January 1, 1918. However, before considering this phase of the case we will discuss certain other matters proven upon the theory that the same fixed such responsibility upon Clay county.

Claim is made by O'Brien county that in accordance with section 2270 of the 1913 Supplement to the Code, the O'Brien county commissioners of insanity, at the time Katie was committed, found her legal settlement to be in Clay county and so notified the Clay county auditor and that Clay county failed to dispute the question of her legal settlement or of its liability to pay for her maintenance. Fatal to this contention is the record indication that the commissioners of O'Brien county did not make a finding that Clay county was the legal settlement of Katie and necessarily failed to prove that notice of such finding was given Clay county. Poweshiek County v. Cass County, 63 Iowa 244, 18 N. W. 895. Moreover, Clay county at said time was the legal settlement of the Schneiders and had such finding been made there would have been no necessity to dispute it.

The letter from the O'Brien to the Clay county auditor, of date May 16, 1917, refers largely to the care to be given the children, and those of June 2, 1917, and June 11, 1917, concern charges for aid furnished the children by O'Brien county, which charges were apparently thereafter paid by Clay county. It will be noted that the aid furnished the children by O'Brien county was of a temporary nature only and there is no claim that they were granted any relief of a continuing or permanent nature.

Nor is there basis for the contention that said statute placed upon Clay county the burden of instituting action against

O'Brien county within six months, under penalty of liability to maintain Katie for its failure so to do. The statute provided that after an adverse finding by the auditor of the other county that duty rested upon "the county from which the patient was committed". Consequently, in this case it could not have devolved upon Clay county. Buena Vista County v. Woodbury County, 163 Iowa 626, 145 N. W. 282.

Again it is argued notice was given Clay county in the letter of July 27, 1918, in which O'Brien county sent the bill for the cost of committing Katie and stated, "This patient is a charge of your county * * *." That letter was written more than a year after the commitment and subsequent to the time Katie acquired a legal settlement in O'Brien county. Therefore, the only legal effect of the letter was to call attention to the bill for cost of commitment which was due from Clay county because Clay was the county of settlement on May 16, 1917.

It is suggested that under section 2228, Code of 1897, Clay county was required to inform O'Brien county if the claim of settlement was disputed and within thirty days thereafter to institute action for the determination of said place of settlement. Assuming, without deciding, that this method for determining the settlement of insane persons was not superseded by the subsequent enactment of section 2270 of the 1913 Supplement, it was not applicable to the case at bar. The reason for this was that the only bills presented by O'Brien county to the Clay county board were for expenses incurred prior to January 1, 1918, and there could have been no successful denial by Clay county of the legal settlement at the respective times when said expenses were incurred. In paying the bill for expense of commitment and the bills for caring for the children, Clay county discharged obligations for which it was in any event liable because they were incurred while the legal settlement of the family was in Clay county. Scott County v. Polk County, 61 Iowa 616, 14 N. W. 206, 16 N. W. 726. The payments by Clay county to the State Hospital for the support of Katie prior to January 1, 1918, were also properly due from Clay county.

Therefore, the things and matters referred to in this division as having been done by either of the two counties prior to January 1, 1918, were not sufficient to affect the residence or settlement of Katie Schneider. The net result of said matters

was the payment by Clay county of the various expenses incurred prior to January 1, 1918, as was its legal responsibility.

■    II.    This case turns largely upon the determination of the county of legal settlement of Katie Schneider subsequent to January 1, 1918.    Clay county now concedes that it was chargeable with all expenses incurred prior to said time.    However, it contends that shortly prior to January 1, 1918, Katie Schneider secured legal settlement in O'Brien county, and that, therefore, O'Brien county should be charged with the expense of her maintenance at the state hospital subsequent to that time.

Section 2270, 1913 Supplement to the Code, recites in part:

"The *residence* of any * * * insane * * * inmate of any state institution shall be that existing at the time of admission therein."    (Italics supplied.)

This clause first appeared in the Code of 1897, and is now found in section 3581, Code of 1935.

Section 2224, Code of Iowa 1897, then in effect provides:

"A legal settlement once acquired continues until lost by acquiring a new one, and may be acquired as follows:

"1.    Any person having attained majority, and residing in this state one year without being warned as hereinafter provided, gains a settlement in the county of his residence;

"2.    A married woman follows and has the settlement of her husband, * * *."

This subdivision first appeared in the Code of 1851.

Section 2226, Code of 1897, provides that a county may prevent a resident from acquiring a settlement by serving upon such resident, before such residence has continued a year, a notice warning him to depart.    After such warning a person could not, under the statute then in effect, acquire a settlement except by the requisite residence for one year without further warning.

Without dispute the record shows that no warning notice to depart was ever served upon any of the Schneiders by O'Brien county.    It also appears that from the time they established their residence in Moneta, O'Brien county, late in 1916, Katie's husband, John Schneider, and their children continuously resided in O'Brien county to the time of the trial of this case.

Hence such residence ripened into legal settlement for the husband and children shortly prior to January 1, 1918.

In determining the legal settlement of Katie Schneider, consideration must be given section 2224, Code of 1897, which is found in the chapter on Support of the Poor, and provides that a married woman follows and has the legal settlement of her husband, in connection with the later adopted clause in section 2270 that the residence of an insane inmate of a state institution shall be that existing at the time of admission.

In Washington County v. Mahaska County, 47 Iowa 57, decided before the adoption of the last mentioned clause, it was held that a person becoming insane may gain a settlement by a residence commencing when sane, that a married woman abandoned by her husband may acquire a settlement as though she were unmarried and that her residence in the insane hospital would be regarded, for the purpose of acquiring a settlement, as being in the county where she resided at the time of commitment. To the same effect was Washington County v. Polk County, 137 Iowa 333, 113 N. W. 833.

Polk County v. Clarke County, 171 Iowa 558, 151 N. W. 489, holds that when the family unity is broken by the confinement of the wife in a hospital for the insane the husband cannot change her legal settlement by removing to another county and acquiring a settlement there. Her settlement remains unchanged by any act on his part. This case was decided after the adoption of the clause in section 2270, but the commitment and other occurrences upon which liability was sought to be predicated took place prior to said amendment.

Scott County v. Townsley, 174 Iowa 192, 194, 156 N. W. 291, 292, also involves an insane married woman and cites with approval from the above case that "the legal settlement of an insane wife committed to the insane hospital from the proper county remains unchanged by any act on the husband's part". Also cited is the Code provision that the residence of an insane inmate of a state institution shall be that existing at the time of admission therein, and "this clause became a part of the statute while defendant [the husband] was a resident of Scott County, but, regardless thereof, such was the law."

The statement "such was the law" was, we think, in accord with the rule of all the above cited cases. As therein noted, the basis for these holdings was that the family unity was broken

by the abandonment of the wife or her confinement in an asylum, thereby destroying the premise that while married she could not have a legal residence apart from her husband. However, since the addition to the statute of the provision that the residence of an insane inmate of a state institution shall be that existing at the time of admission, it is no longer necessary to follow the line of reasoning theretofore adopted. The statute does not except married women and they are within its scope the same as single persons and the heads of families. The same result is reached whether it be based upon the statute or upon the fiction that the destruction of the unity of the home takes from the husband the power to change the wife's residence or settlement by any affirmative act on his part. Consequently, the residence and resulting legal settlement of Katie Schneider may be determined by the rules applicable to insane men inmates of state institutions.

State ex rel. Gibson v. Story County, 207 Iowa 1117, 224 N. W. 232, is quite in point upon the propositions here involved. In that case, Robinson, a resident of Story county, moved to Jasper county, February 14, 1925, was placed in jail in Story county in April 1925, and while still there incarcerated was, on June 30, 1925, adjudged insane by the Story county commissioners and committed to a state hospital. The Story county commissioners found his legal settlement to be in Jasper county. Upon being so notified Jasper county filed notice disputing settlement with the commissioners and auditor of Story county, and also with the superintendent of the state hospital. However, Jasper county *did not serve warning to depart upon Robinson,* and 'for that reason the court found that while he was in the state hospital he gained legal settlement in Jasper county, February 14, 1926, and that Jasper county was liable for his maintenance in the state hospital thereafter. In that case Story county relied upon the provision of section 3593, Code of 1924 (also Code of 1935), that the question involved was the legal settlement "at the time of the commitment". To that contention the court replied, 207 Iowa, loc. cit. 1119, 224 N. W., loc. cit. 233:

"This language does not limit it to the legal settlement at the time of the commitment, but means the legal settlement of the ward at any time that may be in dispute."

O'Brien county, in this case, was in the same position as was Jasper county in the cited case. In that case as in this, the insane person, at the time of commitment, had a residence of less than one year in a certain county. Under such circumstances that certain county continued to be the county of residence even though the insane person was thereafter actually confined in the state hospital. The residence of Katie Schneider at the time of commitment was O'Brien county. This residence commenced shortly before January 1, 1917, and continued during her confinement at Cherokee State Hospital. This legal *residence* became her legal *settlement* on January 1, 1918, because within one year from the time O'Brien county became her residence said county failed to serve warning notice to depart therefrom. At the same time she lost her legal settlement in Clay county. Therefore, from and after January 1, 1918, O'Brien county was liable for the support of Katie Schneider at Cherokee State Hospital.

III. It is contended that Clay county is estopped to claim Katie Schneider acquired a legal settlement in O'Brien county by the failure of Clay county to take immediate steps to secure the determination of the legal settlement of Katie and the Schneider family. Had this been done, say counsel, O'Brien county, prior to January 1, 1918, could have served upon the Schneiders notice to depart, thereby preventing the obtaining of legal settlement therein. The record does not establish this contention. Clay county was the legal settlement of all the Schneiders until January 1, 1918, and was responsible for them until that time. Therefore, there was no reason which required it to dispute the settlement during 1917. Nor was there a showing of any misrepresentation or concealment by Clay county, prior to January 1, 1918, which caused or led to the failure of O'Brien county to serve proper warning to depart. Consequently, there could be no estoppel.

IV. However, the payments made by Clay county to the State Hospital for the support of the insane woman after January 1, 1918, were in a different category. These were disbursements voluntarily made for which Clay county was not legally liable and they were so made with express or implied knowledge of that fact. For almost fourteen years these were continued without protest or objection. Moreover, no demand

for repayment was made upon O'Brien county for more than seventeen years.

Had it not been for the rule of law by which such charges are treated as open accounts, all except a small portion of the claim would have been barred by the statute of limitations. As it was there was such delay that O'Brien county was served with notice of this suit only a few months before the entire bill of Clay county would have been so barred. Harrison County v. Dunn, 84 Iowa 328, 51 N. W. 155; Cedar County v. Sager, 90 Iowa 11, 57 N. W. 634; Washington County v. Mahaska County, 47 Iowa 57; Scott County v. Townsley, 174 Iowa 192, 156 N. W. 291.

Courts are not inclined to view with approbation claims of this character which have accumulated and laid dormant for many years. Aptly expressing the situation is a statement in Polk County v. Clarke County, 171 Iowa 558, loc. cit. 563, 151 N. W. 489, loc. cit. 490:

" * * * and if, as in the case at bar, such bills may accumulate for more than twenty-six years without notice, express or implied, and then the collection thereof be enforced, it might well become a source of embarrassment to many counties."

The allowance of this and other similar claims might require such heavy and unanticipated expenditures from the tax funds raised for the care of insane in certain counties that said funds would for a time prove insufficient for the support of other unfortunate insane persons. Such result would greatly hamper the purpose of this humanitarian legislation.

In Gray v. Bloom, 151 Iowa 566, loc. cit. 570, 132 N. W. 42, 44, this court said:

"As against defendant's claims, plaintiffs' plea of laches is still more conclusive. In this state a court of equity recognizes as binding upon it the provisions of the statute of limitations, but it also possesses the equitable power of disregarding stale claims, even though they may not have been technically barred by the statute."

See, also, Withrow v. Walker, 81 Iowa 651, 47 N. W. 893.

Public policy in some cases does forbid the application of the doctrine of laches to the acts of an arm of the government through its representatives. This is for the protection of the

public. But where two counties are the interested parties there is no good reason why public policy should require that the people of one be penalized for the laches of the representatives for the other. The law should, as far as possible, protect both, without preference to either.

In the handling of claims for expenses incurred for support of the insane, county officials have been given certain discretionary powers, and we have held their negligence and laches in handling such claims will be imputed to the county the same as to any person or private corporation. In re Estate of Wagner, 226 Iowa 667, 284 N. W. 485; In re Jacob's Estate, 119 Iowa 176, 93 N. W. 94; Harrison County v. Dunn, 84 Iowa 328, 51 N. W. 155. Therefore, we think the bar of laches may properly be applied in this case, and we are convinced that the circumstances of the case demand its interposition. Under the conditions, to require O'Brien county at this late date to reimburse Clay county for voluntary payments which began many years ago and extended over the intervening period would not accord with the principles of equity. O'Brien county should be required to maintain this unfortunate woman from the time Clay county ceased making payments thereon, but should not be saddled with the burden of the old payments.

Wherefore, the decree of the trial court is in all respects affirmed.—Affirmed.

MITCHELL, C. J., and RICHARDS, SAGER, MILLER, HALE, HAMILTON, and BLISS, JJ., concur.