IN RE MAINTENANCE OF CHILDREN OF PEARL NEWHOUSE.

PEARL NEWHOUSE, Appellant, v. BOARD OF SUPERVISORS OF HARRISON COUNTY, Appellees.

No. 46244.

MAY 4, 1943.

REHEARING DENIED SEPTEMBER 27, 1943.

Roy E. Havens, of Logan, for appellant.

Michael Murray and Carl V. Burbridge, of Logan, for appellees.

BLISS, J.—  The plaintiff lived with her parents in Pottawattamie county until 1929, when she married and went with her husband to Custer County, Nebraska, where she lived until 1940. Four children were the issue of the marriage, the eldest being born in February 1931, and the youngest in September 1940. The husband died March 12, 1940, and she and the children left Nebraska in July 1940 and returned to her home folks in Pottawattamie County, Iowa, where she remained until August 8, 1940, when she established a home for herself and the children in Missouri Valley, in Harrison County, Iowa. This place had always been the market town for her father's family.

She had no property or income and her own people were not in circumstances to aid her much. For a year or more prior to August 16, 1941, she received relief for herself and the children from Custer County, Nebraska. She testified that when she moved to Missouri Valley she did so with the intention of making it her permanent home. This case is triable de novo on appeal. We have no doubt of her intention to make Missouri Valley her home. When relief ceased to come from Nebraska, she made application for relief in Harrison county. The director of relief in that county refused to give her any aid and directed her to return to Custer County, Nebraska. On August 7, 1941, apparently on the director's advice she returned with her children and part of her furniture to her old home in Nebraska, and after being denied relief there, she came back on August 30, 1941, to Missouri Valley, where she has continued to live. On November 7, 1941, the following notice was served upon her by the deputy sheriff of Harrison county, to wit:

"State of Iowa, Harrison County, ss: Logan, Iowa.
To Pearl Newhouse
Address Missouri Valley, Iowa, 6th Street.

You are hereby notified that you are not a resident of Harrison County; and as you have, or it is presumed you may apply to said County for aid and support, you are therefore hereby notified to take your departure from this County, and return to the place of your settlement, as Harrison County will not be responsible for your support.

Given under my hand this 4th day of November, 1941.

P. T. Hockett,
Overseer of the Poor of Harrison
County, Iowa."

The plaintiff and her children continued to live in Harrison county after the service of the notice. She received some gratuitous support from the county from January 1942 to June of that year. On August 17, 1942, the plaintiff filed her petition praying for the support provided for minor children by section 3641 of the 1939 Code. The answer of the defendants was a general denial. There was evidence to establish the facts

which we have set out. After noting findings of fact, in substance as here stated, the decree continues:

"The Court is of the opinion that when the petitioner accepted the relief from the State of Nebraska, that she was receiving it under the rules and laws of Nebraska the same as those of the State of Iowa, there being nothing before the Court to indicate what the rules of Nebraska in respect to residence, legal settlement and so forth might have been during the said time. The presumption probably would be that they were the same as those of Iowa. And having received said relief to about August, 1941, and then having gone back to Nebraska with her children in order to continue the relief, if possible from Nebraska, would be inconsistent with residence in Iowa during the period. She came back to Iowa in August, 1941, and having received notice to depart in November, 1941, she has not acquired a one year's residence necessary under the Statute, and, therefore,
The relief is denied and the petition dismissed."

Appellant relies for reversal upon two propositions (1) that the record established that she had been a resident of Harrison county for more than a year prior to the filing of her petition for a widow's pension (2) that the record did not establish that she had ever been served with the notice to depart from Harrison county.

To sustain the decree the appellees contend (1) that the appellant had not been a resident of Harrison county for one year preceding the service on November 4, 1941, of the notice to depart (2) that the evidence establishes that such notice was served on appellant before she had acquired one year's residence in the county, and within one year prior to the filing of appellant's petition herein.

I. Section 3641, on which appellant bases her right to recover is in chapter 180 of the Code of 1939, which is entitled, "Care of Neglected, Dependent, and Delinquent Children." This legislation first appeared in the 1913 Supplement to the Code of 1897. Section 3641 is as follows:

"If the juvenile court finds of record that the mother of a neglected or dependent child is and has been a resident of the

county for one year preceding the filing of the application, and is a widow and a proper guardian, but, by reason of indigency, is unable to properly care for such child, and that the welfare of said child will be promoted by remaining in its own home, it may, on ten days written notice to the chairman of the board of supervisors, of said application, by proper order determine the amount of money, not exceeding two dollars and fifty cents per week, necessary to enable said mother to properly care for said child. The board of supervisors shall cause said amount to be paid from the county treasury as provided in said order. Such order may, at any time, be modified or vacated by the court. No payment shall be made after said child reaches the age of sixteen years, or after the mother has remarried, or after she has acquired a legal residence in another county, or after she has become a nonresident of the state.

"No person on whom the notice to depart provided for in chapter 189.4 shall have been served within one year prior to the time of making the application, shall be considered a resident so as to be allowed the aid provided for in this section."

The last paragraph of the section was added to it by the Forty-second General Assembly, by enacting chapter 72 of its laws, effective July 4, 1927.

Chapter 189.4 is entitled "Support of the Poor," and most of its provisions may be found in all of the preceding Codes. At the time of adoption of chapter 72 of the Forty-second General Assembly, the chapter on the "Support of the Poor" was 267, and was so referred to in chapter 72 of the Acts of the Forty-second General Assembly. The section covering the matter of notice has been substantially the same in all of the Codes. In chapter 189.4, Code of 1939, this section is 3828.092, and is as follows:

"Notice to depart. Persons coming into the state, or going from one county to another, who are county charges or are likely to become such, may be prevented from acquiring a settlement by the authorities of the county, township, or city in which such persons are found warning them to depart therefrom. After such warning, such persons cannot acquire a settlement except by the requisite residence of one year without further warning."

Chapter 148, Acts of the Forty-ninth General Assembly, changed the time from one year to two.

County officials have had much difficulty in applying the provisions of chapters 180 and 189.4 to particular cases, and the attorney general has been asked by these officials on numerous occasions to give opinions on these matters, and to construe various sections of the chapters. These opinions construing section 3641 have not always been consistent.

Appellees contend that appellant did not procure residence in Harrison county prior to August 16, 1941, because during all of said time she was receiving aid for dependent children from Custer County, Nebraska, and the acceptance of such relief was inconsistent with residence in Harrison county. This conclusion of the appellees is based upon an opinion of the attorney general, dated February 15, 1940, appearing on pages 479–483 of the 1940 "Report of Attorney General."

Of this opinion the appellees say:

"This opinion contains an exhaustive discussion of the legislative intent behind the enactment of the amendment to Section 3641 and the conclusion therein reached is that it was the intention of the legislature to make legal settlement the prerequisite for the claiming of a widow's pension rather than residence as had been previously required under the statute."

That the appellees have correctly construed the view of the attorney general as expressed in this opinion appears from this statement of that opinion, at page 482, to wit:

"In order that our interpretations of the sections referred to [sections 3641, 5311, 5315] may be more readily understood, we say that the last paragraph of Section 3641, should be construed as if the same read, 'no person shall receive a widow's pension who has not a *legal settlement* in the county.'" (Italics are ours.)

We do not agree with these conclusions. They are contrary to the express language of section 3641, both before and after its said amendment. Prior to the amendment, effective July 4, 1927, it was necessary only that the widow be a "resi-

dent'' of the county for the required time to entitle her to petition for the pension. Another provision is that payments shall not be made after she has acquired "legal residence" in another county or has become a "nonresident" of the state. And in the last paragraph, which is the amendment, the language is that if the notice in chapter 189.4 has been served within the year prior to applying for the pension, the widow shall not be considered a "resident" within the purview of the section. It clearly appears that the only status contemplated by the statute and intended by the legislature, either before or after the amendment, is that of "residence." Had the legislature ever intended that "legal settlement" was a prerequisite, it no doubt would have expressly said so. The distinction between the terms, "residence" and "legal residence," and the term, "legal settlement," has long been well understood. The terms are not synonymous, and we have held that they are not. In State ex rel. Gibson v. Story County, 207 Iowa 1117, 1118, 224 N. W. 232, 233, we said:

"The court found that Robinson acquired *a residence* in Jasper County on February 14, 1925, and that he gained a *legal settlement* in said county on February 14, 1926; that, prior to February 14, 1926, *his legal settlement* was in *Story County* * * *. (Italics ours.)

It thus appears that Robinson had his "residence" for a year in Jasper county, although during that same year his "legal settlement" was in Story county. On page 1120 of 207 Iowa, page 234 of 224 N. W., the court said:

"Residence and legal settlement are not synonymous terms. It may be one in one county and the other in another * * *."

As noted in State ex rel. Keary v. Mohr, 198 Iowa 89, 95, 199 N. W. 278, "settlement" for the purpose of determining the matter of support for the poor has no application to the matter of "residence" for voting purposes. See, also, State ex rel. O'Connor v. Clay County, 226 Iowa 885, 892, 894, 285 N. W. 229, where the distinction is referred to.

Likewise in the case before us, if the pertinent statutes are the same in Nebraska as those of Iowa, and we must assume

they are in the absence of a contrary showing, during the year from August 1940 to August 1941, Pearl Newhouse had her "legal settlement" in Custer County, Nebraska, but was a "resident" of Harrison County, Iowa, within the express language of section 3641, and during that year might acquire the necessary residence to petition for a widow's pension thereunder. See Code sections 3828.088(2) and 3828.089.

Adopting the 1940 opinion, supra, of the attorney general's office, which states that it overrules the opinions of former attorneys general conflicting therewith, the appellees contend that the fact that she was receiving support from the public funds of Nebraska from August 1940 to August 1941, prevented her from being a resident of Harrison county during that time. They rely upon paragraph 3 of section 3828.088, of chapter 189.4 of the 1939 Code, which provides:

"Any such person who is an inmate of or is supported by any institution whether organized for pecuniary profit or not or any institution supported by charitable or public funds in any county in this state or any person who is being supported by public funds shall not acquire a settlement in said county unless such person before becoming an inmate thereof or being supported thereby has a settlement in said county."

The trouble with this contention is that section 3828.088 has no application to section 3641, and is not a part of it by reference or otherwise. Simply because the last paragraph of section 3641 refers to the notice to depart, provided for in chapter 189.4, to wit, sections 3828.092 and 3828.093, does not make every other section in chapter 189.4 applicable to, or a part of, section 3641. It is true that if it were necessary to have a "legal settlement" before a widow could apply for relief under section 3641, the fact that appellant received support from the public funds of Nebraska would have prevented her from acquiring a "legal settlement" in Harrison county while she was receiving such funds, but the receipt of such funds did not prevent her from acquiring a residence in Harrison county during such time as required by section 3641. Such was the view of the attorney general's office, as stated in opinions

7, 8 and 9 on pages 874–877, of the 1938 "Report of Attorney General." It appears to us to be sound.

Section 3657 demands that chapter 180 shall be liberally construed to the end that its purpose may be carried out.

As throwing some light on this question, we call attention to Adams County v. Maxwell, 202 Iowa 1327, 1329, 1330, 212 N. W. 152, 153, wherein the court said:

"The history of the legislation is of some importance, as showing that it is not an elaboration of the provisions made for the support of paupers at public expense, but is, both in fact and in purpose, an integral part of statutory provisions designed to secure better control of, and better living conditions for, neglected, delinquent, or dependent children, to the end that they may not become paupers or criminals, but may have opportunity to become useful members of society. It is apparent, too, that the present requirement of one year's residence in the county has been the result of gradual changes, and was doubtless made to meet the need of greater certainty in the law.

"That there is an essential difference between residence and a legal settlement, within the meaning of the statutes relating to the support of paupers, is apparent from a consideration of those statutes themselves. By Section 5311 it is provided that an adult may acquire a settlement in the county of his residence by residing there one year, without warning to depart. Under Section 5315, a person cannot, after such warning, acquire a settlement, except by the requisite residence of one year without further warning. It would seem that one might be a resident of a county for years, and yet, by reason of successive and timely warnings to depart, never acquire a legal settlement there.

"The legislature has seen fit to make residence for one year on the part of the widow, and not legal settlement under the Pauper Acts, requisite to an allowance of public aid in the support of her children, under Section 3641."

While this case was decided before the amendment of 1927, it is a sound interpretation of the section as it now appears.

II. Appellees also insist that the period from August 7th to August 30, 1941, during which the appellant and her

family were in Nebraska, interrupted her residence in Iowa. The circumstances under which she made this trip indicate the contrary. We think she did not thereby lose or interrupt her residence in Harrison county.

III. It is our conclusion that the appellant was a resident of Harrison county for the year necessary to entitle her to make application for the relief provided for in section 3641, had she made such application before the service of the notice to depart on November 4, 1941. She had acquired such necessary residence on or about September 1, 1941, but she did not file her application at that time but waited almost a year, and until August 17, 1942. In the meantime, and on November 4, 1941, within the year preceding the filing of her application, the notice referred to in the last paragraph of section 3641 was served upon her, and because of such service she could not be "considered a resident so as to be allowed the aid provided for in this section." The facts bring her clearly within the exception provided for in the last paragraph of the section. She was therefore barred from securing relief under the statute.

IV. To avoid this result appellant insists that there was no proper proof that the notice of November 4, 1941, was ever served upon her, or that a return of service was ever made to the board of supervisors, as provided in section 3828.093. It is true that Hockett, overseer of the poor, whose name was subscribed to the notice, was not a witness, and his signature was not identified. But the director of social welfare for the county was a witness and testified that the notice, with return of service thereon, was a part of the records of his office, and was found there when he took office on March 6, 1942. The deputy sheriff testified to the service of the notice on appellant on November 4, 1941. The appellant testified that she talked to Mr. Hockett, "the director of relief in Harrison County" in August 1941. Under the provisions of section 3828.098, the overseer of the poor has all the powers of the township trustee with respect to the poor. The appellant did not testify that the notice was not served upon her. We think the record establishes that proper notice was served on November 4, 1941, as required by sections 3828.092 and 3828.093.

The fact that the notice and return of service was not shown to have been filed with the board of supervisors or with the auditor as clerk of the board is not sufficient to establish that the statute was not substantially complied with.

The decree of the district court is affirmed.—Affirmed.

GARFIELD, C. J., and HALE, MILLER, WENNERSTRUM, and MULRONEY, JJ., concur.

SMITH and OLIVER, JJ., dissent.

SMITH, J. (dissenting)—The majority opinion, in Division III, holds that on or about September 1, 1941, appellant completed the one year's residence in Harrison county necessary to entitle her to the aid provided for by Code section 3641, and that her right to such aid then became fully matured. With this conclusion I fully agree.

But the opinion then goes on to conclude that thereafter, on November 4th, she lost that right because there was served on her a "notice to depart" under Code chapter 189.4. From this decision I must respectfully dissent.

The majority reaches this remarkable result by a literal reading of the last paragraph of section 3641, which reads:

"No person on whom the notice to depart provided for in chapter 189.4 shall have been served within one year prior to the time of making the application, shall be considered a resident so as to be allowed the aid provided for in this section."

I contend that a literal reading of that paragraph is not required by or in harmony with sound rules of statutory construction and that it leads in this case to a result never intended by the lawmakers.

The paragraph seems clearly designed to *prevent*, under certain conditions, the completion of a year's residence; not to *deprive* the widow of rights after once fairly acquired.

Let us start with the proposition which the majority concedes, that the entire chapter 180, which includes section 3641, is to be liberally construed to the end that its purpose may be carried out. Code section 3657.

Let us keep in mind that this chapter is designed to pro-

vide care for "neglected, dependent, and delinquent children." The "notice to depart," on the other hand, originates in a chapter [189.4] concerned with "support of the poor." The object of one is care for neglected and dependent, or delinquent children; of the other, to support poor persons generally. The first is based on "residence" for the requisite length of time; the other, on a "settlement," acquired by residence for the required time, unless the "notice to depart" is served before the full period has elapsed. Even under chapter 189.4 no one ever contended that a "notice to depart" could deprive a poor person of a legal "settlement" once acquired. It seems incredible that the legislature, by adding this paragraph to section 3641 intended thereby to make it possible to deprive a widow of the right to aid for her dependent children, after that right was once earned by good-faith residence for a year.

We are not bound by the literal meaning of the words used in a statute. In Oliphant v. Hawkinson, 192 Iowa 1259, 1263, 183 N. W. 805, 807, 33 A. L. R. 1433, we quoted with emphatic approval language from an Illinois case [Hoyne v. Danisch, 264 Ill. 467, 483, 106 N. E. 341, 347] which said, in part:

"In construing a statute the courts are not confined to the literal meaning of the words. A thing within the intention is regarded within the statute though not within the letter. A thing within the letter is not within the statute if not within the intention. When the intention can be collected from the statute, words may be modified or altered so as to obviate all inconsistency with such intention."

In an earlier case we said, with reference to the Code section concerning privileged communications between husband and wife:

"The literal reading of the statute would seem to be quite conclusive against the right to call either the husband or wife to speak from the witness stand respecting communications had between them, no matter what the character thereof or the occasion or purpose. But we are not always restricted to the precise words employed, in getting at the meaning of a statute. And it is the real purpose and intent of the Legislature,

as meant to be expressed, to which we are to give force of operation.'' Sexton v. Sexton, 129 Iowa 487, 488, 105 N.' W. 314, 315, 2 L. R. A., N. S., 708.

Earlier cases are cited in support of this language. Corpus Juris thus states the rule and cites these Iowa cases, among many others, to support it:

''In pursuance of the general object of giving effect to the intention of the legislature, the courts are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof, it being generally recognized that whatever is within the spirit of the statute is within the statute although it is not within the letter thereof, while that which is within the letter, although not within the spirit, is not within the statute.'' 59 C. J. 964, section 573.

It seems clear to me that when this plaintiff completed her one year of residence in Harrison county on or about September 1, 1941, she became entitled to this aid for her children. A ''notice to depart'' thereafter might prevent her from acquiring a ''settlement'' but it could not divest her and her children of the ''residence'' already completed and the rights already matured. It was surely not contemplated that she would be penalized by not promptly and forthwith starting for the courthouse. The time that elapsed after the service of notice to depart and up to the time she filed her application in this case was not needed in computing and determining her right to aid.

It can hardly be said that the language of the paragraph is so clear as not to require interpretation. The majority opinion discloses that it has been the subject of study by and conflicting views from the attorney general's office. Appellees and the trial court in the instant case do not agree with the views concerning it expressed by the majority. Perplexing questions have evidently arisen in an effort to harmonize it with the purposes of the rest of the chapter.

Construing the statute liberally, ''to the end that its purpose may be carried out,'' I would reverse and give to the

appellant the aid for her children which she and they became entitled to several months before "notice to depart" was served on her by those officials charged with administering poor relief.

Justice OLIVER authorizes me to say he joins in this dissent.