IN RE ESTATE OF GEORGE S. KEES.

H. P. DOWLING, Executor, Appellee, v. BENNETT CULLISON, Guardian ad litem, Appellant.

No. 47183.

(Reported in 31 N. W. 2d 380)

MARCH 9, 1948.

Bennett Cullison, of Harlan, for appellant.

More & More, of Harlan, for appellee.

GARFIELD, J.—The question presented is whether the trial court abused its discretion in electing for the insane widow to take under the will of her deceased husband.

The widow, age seventy, who married testator in 1903, has been confined to a state hospital for the insane since about 1911. Apparently she is incurable. Testator, eighty-five at death, also left three daughters by a prior marriage. The widow has one daughter by an earlier marriage.

The will, made in 1940, devises 320 acres in Oklahoma to one daughter. To each of testator's other daughters is devised a fractional 40 acres (about 36½ acres) near Harlan, Iowa, and a vacant lot in Harlan. Testator's home in Harlan is left to his widow's daughter. The provision for the widow is a bequest to the executor and trustee of an improved farm of 160 acres in Shelby county, in trust, to use the income therefrom after payment of taxes and upkeep "for the care and keep of my wife." Upon the wife's death the farm is to be sold and the proceeds divided equally among testator's three daughters and the widow's daughter, to whom the residuary estate also goes in equal shares.

Three months after the will was admitted to probate the executor, pursuant to section 636.25, Code, 1946, filed affidavit that the surviving spouse is mentally incapable of making election to take or refuse to take under the will. Notice of hearing was served upon the widow and a guardian ad litem appointed to represent her, pursuant to Code section 636.26. At the hearing most of the matters above stated were shown, also the nature and value of testator's estate. At the conclusion of the hearing the trial court entered an order finding it to be for the best interests of the widow that she take under the will and so electing for her. From such order the guardian ad litem has appealed to us.

Except as to the value of the Oklahoma land, there is no wide disagreement in the evidence. Testator owned a residence in Harlan not specifically devised. The executor estimated its value at $3,500, two other witnesses at $3,000. The executor

gave the value of each of the two fractional forties near Harlan at $125 an acre. The other two witnesses put such values at $90 and $110 per acre. These forties consist of highly productive bottom land, unimproved except for fences. The executor valued the two vacant lots at $200, another witness at $350. Testator's home in Harlan was valued by the executor at $2,500 and by another witness at $2,500 to $2,700.

The executor and another witness gave the value of the 160 acres in which the widow was left a life estate at $125 an acre, a total of $20,000. The remaining witness placed such value at $125 to $135 an acre. The farm is rolling but can be cultivated except for a ditch through it. It is "a little below average," considerably inferior to the forties, in productiveness. It has a fair house, a barn and corncrib, both in poor condition. The barn needs major repairs. "The farm hasn't been very well kept up. It has been below average in care and management." In 1946 gross rent from the farm was $2,892. Taxes were $186.

The daughter to whom the Oklahoma land was devised testified its value with improvements is $16,000, without the improvements $9,600 to $10,000. This daughter, while occupying it, spent $6,000 to $7,000 for improvements on the land for which it would seem she should be reimbursed if the land were sold. The daughter's son gave the value of the Oklahoma land, with improvements, at $9,000. His qualifications to testify to such value do not appear.

The executor's inventory gives the value of all real estate, except that in Oklahoma, at $30,000, and the Oklahoma land at $10,000. As a witness the executor placed the total value of the real estate, except the Oklahoma property, at $35,285. Total corresponding values given by the other two value witnesses range from about $32,750 to $35,285. Thus the value of the 160-acre farm ($20,000) in which the widow is left a life estate, is somewhat more than half (about 4/7) of the value of the Iowa real estate. If we accept the daughter's testimony of $10,000 as the value without improvements of the Oklahoma land, the value of the 160-acre farm is somewhat less than half (about 4/9) of the value of all the real property. There is no incumbrance against any of the realty.

The executor's inventory states the value of the personal estate is $16,791. It consists of $4,983 money on deposit, $9,308 stocks, bonds and notes, and $2,500 corn and miscellaneous property. Unpaid claims against the estate are about $972, aside from costs and expenses of settling the estate. The executor's attorney stated there will be court costs, attorney's and executor's fees of approximately $3,500. Of course there is no way of knowing the amount of such fees until allowed by the court. But accepting the attorney's statement, the net value of the personalty exceeds $12,000. It is not clear whether the accrued rentals of $2,892 on the 160 acres should be added to this amount. In any event, the value of the realty and the personalty, net, appears to be at least $57,000.

 The widow's distributive share in the personalty, as well as the realty, could not in the absence of an election be affected by the husband's will. Sections 636.1, 636.5, 636.21, Code, 1946; Fleming v. Fleming, 194 Iowa 71, 106, 174 N. W. 946, 180 N. W. 206, 184 N. W. 296, and citations; In re Estate of Smith, 165 Iowa 614, 617, 146 N. W. 836; Vosburg v. Mallory, 155 Iowa 165, 173, 135 N. W. 577, Ann. Cas. 1914C, 880. See, also, Roberts v. Roberts, 231 Iowa 394, 403, 404, 1 N. W. 2d 269, 273, 274.

 We may observe it has been held an election by a court of the state in which a testator was domiciled is effective as to real property in another state. Washburn v. Van Steenwyk, 32 Minn. 336, 20 N. W. 324. Also, since there is no pleading or proof to the contrary, it is presumed the law of Oklahoma as to the extent of the dower right is the same as ours—one third in value (Code section 636.5). In re Maintenance of Newhouse, 233 Iowa 1007, 1013, 1014, 9 N. W. 2d 372, 375; Acme Feeds, Inc. v. Berg, 231 Iowa 1271, 1275, 4 N. W. 2d 430, 432; Calhoun v. Taylor, 178 Iowa 56, 67, 159 N. W. 600. See, also, 31 C. J. S., Evidence, section 133; 20 Am. Jur., Evidence, section 182.

 Section 636.26, Code, 1946, requires the court to make such election "as it shall deem under the evidence to be for the best interests of such spouse." There seems to be no decision of ours under this statute. In re Estate of Stevens, 163 Iowa 364, 144 N. W. 644, is apparently the only Iowa case of this

kind, but the statute there involved, what is now Code section 636.29, does not contain the provision just quoted, subsequently enacted in 1919.

In the Stevens case the trial court elected for the widow against the will and we affirmed, observing that a wide discretion is vested in the trial court in such matters which will not, as a rule, be interfered with on appeal. The opinion indicates the trial court might properly consider the question of benefit to the survivor's heirs. This seems to be contrary to the present statutory provision above quoted as well as to all other decisions we find on the subject except Mead v. Phillips, 77 U. S. App. D. C. 365, 135 F. 2d 819, 829, 147 A. L. R. 322, 333, which cites our Stevens case with approval. We think the matter of benefit to the kin of the survivor, or of the testator, has little if any bearing upon the controlling question what is for the best interests of the survivor. Many cases of this kind which support our views may be found in annotations 74 A. L. R. 452, 456 ff.; 147 A. L. R. 336, 340–343.

The guardian ad litem argues that the value of the widow's statutory share greatly exceeds the value of the life estate given her by the will. It must be admitted the value of the farm in which the life estate is created does not greatly exceed a third of the entire estate. And of course a life estate is ordinarily of much less value than a fee in the same property.

But there is substantial agreement among the authorities that the best interests of an insane spouse do not depend entirely on which provision, statutory or testamentary, is the more valuable. The question of value is a proper consideration but it is not controlling. Van Steenwyck v. Washburn, 59 Wis. 483, 17 N. W. 289, 295, 48 Am. Rep. 532, said to be probably the leading case on this subject, points out that if the court must elect for the widow the more valuable interest, without reference to any other consideration, it really will exercise no discretion.

Courts generally appear to be somewhat reluctant in this class of cases to reject the provisions of the will if adequate to meet the probable wants of the incompetent spouse. Some of the leading decisions are reversals of the trial court's rejection

of the will which in turn were apparently largely based on the greater value of the statutory right. Van Steenwyck v. Washburn, supra; In re Estate of Connor, 254 Mo. 65, 162 S. W. 252, 49 L. R. A., N. S., 1108; State ex rel. Percy v. Hunt, 88 Minn. 404, 93 N. W. 314.

We are inclined to hold it does not appear the trial court's ruling was an abuse of discretion. So far as shown, the will makes adequate provision for the wants of the widow. The cost of her care at the hospital for the insane does not appear. Of course it does not necessarily follow from this that the choice of the will is for the best interests of the incompetent.

Obviously whatever property is awarded the widow must be controlled and managed by someone for her. Under the trial court's ruling this will be done by the executor-trustee, president of a Harlan bank, selected by the testator for such purpose. There is no suggestion another person would be more capable.

The probable income available for the widow's care is an important consideration. If the income from the 160 acres in 1946 is any guide, it would seem the returns from the farm will be much more than the returns from any other safe form of investment of one third in value of the whole estate. It is a matter of common and general knowledge, of which we take judicial notice, it is difficult to invest funds safely to yield more than about two and one-half per cent. See Stein v. Sharpe, 229 Iowa 812, 818, 295 N. W. 155, 157; 31 C. J. S., Evidence, section 101; 20 Am. Jur., Evidence, section 123.

The widow's statutory share, at the outset, is an undivided third in value of the estate. An undivided interest in several tracts of real estate is not entirely desirable. Unless the matter could be agreed upon, setting off the widow's share might well involve further litigation. If the real estate could not "be readily divided" the court might order it sold and one third the proceeds paid the widow's guardian. Code section 636.16. Either to manage or sell the Oklahoma land would very likely involve much inconvenience and expense.

The main benefit to the widow in rejecting the will would be that, if necessary for her care, resort could be had to the principal of what would be set off to her. While this might

prove desirable, the probability of such necessity does not appear. In any event, such benefit is at least partly offset by the fact that what would be awarded the widow would be somewhat less in value than the 160 acres and the further fact the probable return to her would be less than the returns fairly to be expected from the farm.

We deem it proper to observe that the election made for the surviving spouse to take under the will did not deprive her of her right, under Code section 635.12, to an allowance for support for the period of administration. In re Estate of Frick, 192 Iowa 75, 182 N. W. 790, and citations; Nick v. Nick, 195 Iowa 351, 360, 189 N. W. 829; Andros v. Flournoy, 22 N. M. 582, 166 P. 1173, 4 A. L. R. 387, and annotation 391, 393; annotation 140 A. L. R. 1220, 1221. So far as appears, such allowance was made.—Affirmed.

MULRONEY, C. J., and OLIVER, BLISS, HALE, MANTZ, SMITH, and HAYS, JJ., concur.